Landis BARROW, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–97–0192–CR.

Court of Appeals of Texas,
Amarillo.

July 20, 1998.

---

Law Offices of L. Van Williamson, L. Van Williamson, Amarillo, for appellant.

Swisher County Atty., J. Michael Criswell, Tulia, for appellee.

Before DODSON, QUINN and REAVIS, JJ.

QUINN, Justice.

Following a jury trial, Landis Barrow was convicted of harboring a runaway. In six points of error, he challenges the legal and factual sufficiency of the evidence underlying his conviction. Because all of appellant's points pertain to sufficiency, we will address them together and affirm the conviction.

### Facts

The evidence at trial showed that on March 29, 1997, Sabrina Shuping (a fourteen year old child) was spending the night at her aunt's house in Tulia, Texas, with the permission of her mother. Around midnight, appellant drove to and flashed his car lights at the house. He had been asked to do this by a male friend he encountered on the street. Upon seeing the flashing lights, the child exited her second-story window and jumped to the ground, all the while being watched by appellant. Needless to say, the fourteen-year-old had the permission of neither her aunt nor her mother to leave.

Once the girl was outside, appellant picked her up and the two drove to the "Detail Shop," a business owned by appellant's brother. Shortly thereafter, a police officer of the Tulia Police Department arrived at the shop. Sabrina undoubtedly noticed his arrival for she asked appellant about a location wherein she could hide. Appellant directed her to the bathroom; then, he proceeded to talk with the officer. The latter wanted to search the building, but appellant refused the request. Instead, he demanded that the officer leave. Eventually a second officer arrived and began speaking with appellant. This officer informed appellant that they were looking for a runaway juvenile girl and asked if such a girl was on the premises. Though the officer had some initial difficulty remembering the child's name, he eventually disclosed to appellant that it was Sabrina.

In response, appellant told the officers that an eighteen year old girl from Plainview was on the premises and then ordered the policeman to leave. The officer left.

Several hours later, the second officer returned to the Detail Shop to further question appellant. Again, appellant was told that the child was named Sabrina and was a juvenile. Moreover, the officer apparently believed the minor girl was in the shop. This was evinced by his insisting, several times, that if appellant would simply release the girl to him he would take her home and the matter would be forgotten. Yet, again, appellant denied having the youth, and the policeman left.

In between the visitations by the officers, appellant would occasionally leave the shop and drive to town. He did this, according to the child, to determine "if the cops were going to follow him to see where he was going, to see if I was with him." The girl further testified that she "didn't want to go home, because [she] didn't want to get in trouble." Nevertheless, at approximately 5:00 a.m., she had an individual named Cory drive her to a convenience store near her aunt's house. To avoid detection, however, it was agreed that she would ride in the vehicle's trunk. Upon arriving at the store, the child exited the trunk and walked to her aunt's house.

The record reveals that this was not the first nighttime escapade of the girl. She had acted similarly on four or five occasions. Moreover, the participants in her conduct had developed signals to facilitate her departure. For instance, if she spied one of her accomplices driving in the area, she would flick her bedroom lights on and off. At that point, the accomplice would respond by flashing his lights and awaiting her arrival.

Also revealed by the record was that her appearance at the shop on the night in question was not the first. Ofttimes, she visited the place with her junior high friends. Additionally, appellant and others at the shop knew that the girls with whom she associated were in junior high and under 18, according to the child.

Finally, appellant initially denied knowing the child's youthful age. Yet, he conceded at trial that he began suspecting she was not an adult. This suspicion dawned on him, allegedly, as he went home after the night's activities.

### Standard of Review

 A verdict enjoys the support of legally sufficient evidence if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995) (en banc). In applying this standard, we consider only that evidence which supports the verdict. In assessing the verdict's factual sufficiency, we put aside the requirement that the evidence be viewed through a prism of light favorable to the State. Instead, our task is to review the entire record and decide whether the overwhelming weight of the evidence so contradicts the verdict as to make that verdict clearly wrong or unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996) (en banc). Unless the verdict shocks the conscience or clearly demonstrates bias, the evidence cannot be deemed factually insufficient. *Id.* at 135.

 Under both standards we cannot simply substitute our judgment for that of the fact finder. This is so because we remain obligated to recognize the inherent authority of the fact finder. The fact finder has the power to reasonably infer facts from the evidence, to resolve credibility issues, and to determine who to believe or disbelieve; we do not. *Depauw v. State*, 658 S.W.2d 628, 633–34 (Tex.App.—Amarillo 1983, pet. ref'd).

### Application of Standard

The offense of harboring a runaway is committed when a person:

knowingly harbors a child and he is criminally negligent about whether the child . . .

is younger than 18 years . . . and . . . is voluntarily absent from the child's home without the consent of the child's parent or guardian for a substantial length of time. . . .

TEX. PENAL CODE ANN. § 25.06 (Vernon 1994). Here, appellant contends that the evidence was legally and factually insufficient to support conviction. This is allegedly so because it failed to illustrate that he was criminally negligent regarding the age of the child and her voluntary absence from home without parental consent and for a substantial length of time. That is, he posits that the evidence was inadequate to establish that a reasonable person in his circumstances should have been aware of a substantial and unjustifiable risk that the child was under eighteen and gone from her home for a substantial amount of time without parental consent.[1] We disagree.

#### 1. Age

 As to the matter of age, we immediately note the evidence regarding the time and means by which the child left her aunt's house. It was around midnight when the girl crawled out a second floor window and jumped to the ground. Moreover, appellant saw her do this. One is not required to put aside his common sense when he becomes a juror, and common sense would indicate that adults do not leave their home via windows during the dead of night.

Additionally, the child testified that she not only 1) informed appellant of her actual age but also that 2) everyone, including appellant, knew that the girls with whom she associated were in junior high. More importantly, on the night in question, appellant was expressly told by at least one officer that the girl for whom he searched and who he believed was inside the shop was a juvenile. According to the evidence, this purportedly induced appellant to drive through town to determine whether the police were watching him. Fi-

---

1. One acts with criminal negligence *vis-a-vis* circumstances surrounding his conduct or the result of his conduct "when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur." TEX. PENAL CODE ANN. § 6.03(d) (Vernon 1994).

Furthermore, the risk must be of a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.*

nally, appellant himself conceded that he came to suspect that the child was underage.

Simply put, the foregoing recitation describes evidence upon which a jury could have rationally concluded beyond reasonable doubt that appellant should have been aware of a substantial and unjustifiable risk that the child who he picked up was under eighteen. And, such a conclusion would not be clearly unjust or wrong in view of any contradictory evidence.

### 2. Parental Consent

■ As to the matter of parental consent to be away from home, it is undisputed that the child was not authorized by her mother or aunt to leave the house that night. Furthermore, the manner in and time at which she departed constituted sufficient evidence to support the finding that appellant should have reasonably known that the child's venture was unauthorized. And, the contradictory evidence proffered by appellant was not enough to render the finding clearly unjust or wrong.

■ Moreover, we reject the notion of appellant that because the child's mother permitted the girl to spend the weekend in Tulia at her aunt's house she was somehow authorized to be gone from home. The word "home," as used in § 25.06(a) of the Penal Code, must be accorded its plain and ordinary meaning. *See State v. Mancuso*, 919 S.W.2d 86, 87 (Tex.Crim.App.1996) (en banc) (stating that words contained in criminal statutes must be accorded their plain and ordinary meaning); *Bingham v. State*, 915 S.W.2d 9, 10 (Tex.Crim.App.1994) (en banc) (stating that words should be accorded their "broadest possible understanding to which they are reasonably susceptible in the English language"). The plain and ordinary meaning assigned to "home," as evinced by various dictionaries, encompasses the idea of one's residence or habitation. *Random House College Dictionary* 633 (Rev. ed.1988); *American Heritage Dictionary of the English Language* 629 (1976). And, while the minor here may have had her legal residence in Plainview (given that her parents lived there and she normally did so as well), she was nevertheless residing or living at her aunt's house when she decided to join appellant. Thus, being away from the place where she was then living (her aunt's house) without the consent of her parent was enough to illustrate that she was gone from home sans parental consent.

### 3. Substantial Length of Time

■ As to the matter of absence for a "substantial length of time," we again turn to the ordinary and plain meaning of the word "substantial." In doing so, we find that it encompasses the idea that the thing in question is "ample," "material," or "considerable" in degree, value, or amount. *American Heritage Dictionary* 1284. And, whether something is ample, material, or considerable would depend upon the circumstances involved. Concerning the absence of a child from his home, such things as the duration of the absence, the time of day during which the child was gone, the intent of the child *vis-a-vis* returning home, and the authorization, if any, for the child to be gone would be various criteria meriting consideration. And, in considering those criteria here, we find evidence of 1) a surreptitious and unauthorized departure during the dead of night, 2) effort to hide her from those searching for her, 3) a spoken desire against returning home, and 4) an absence of approximately five hours. These circumstances suffice to legally support the conclusion that a reasonable person in appellant's position should have been aware of a substantial and unjustifiable risk that the child was gone for a substantial length of time without consent. Furthermore, the contradictory evidence does not render that conclusion factually insufficient.

For the reasons stated above, we overrule each of appellant's points of error and affirm the judgment rendered below.