Roosevelt C. THOMAS, Appellant

v.

OLYMPUS/NELSON PROPERTY
MANAGEMENT a/k/a Weyrich
Real Estate, Inc., Appellee.

No. 14–02–01212–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 27, 2004.

Freddie Jackson, Houston, for appellants.

Willie Ben Daw, Peri Hayriye Alkas, Houston, for appellees.

Panel consists of Justices EDELMAN, FROST, and GUZMAN.

## OPINION

KEM THOMPSON FROST, Justice.

At issue in this case is the meaning of "home address" under Texas Rule of Civil Procedure 742a, governing service of citation by delivery to premises. For service to be appropriate under this rule, the plaintiff must list in the complaint "all home and work addresses of the defendant which are known to the [plaintiff]." We must decide whether service is proper under this rule if the plaintiff knows the defendant is being treated at an out-of-town hospital yet does not list this hospital as an address in its complaint. Concluding that service under Rule 742a is not proper in these circumstances, we reverse the trial court's directed verdict as to appellant's wrongful-eviction claim. Finding no other reversible error, we affirm the remainder of the trial court's judgment.

## I. Factual and Procedural Background

At the time of the events made the basis of this suit, plaintiff/appellant Roosevelt C. Thomas had lived in the same apartment in Houston, Texas, for more than twenty years. He leased it from an owner who had appointed defendant/appellee Olympus/Nelson Property Management a/k/a Weyrich Real Estate, Inc. (hereinafter "Weyrich") to manage the apartment complex and, among other things, collect rents due from tenants.

Thomas, a United States Marine Corps veteran from World War II, has been treated over the years for posttraumatic stress disorder dating from his military service. A document admitted in evidence at trial shows that in February of 2000, Thomas was reported as missing and that, on February 23, 2000, police officers broke down the door to Thomas's apartment in an attempt to locate him. The president of Weyrich testified that, upon opening Thomas's apartment, the police officers observed that the apartment was full of old papers and trash. In Weyrich's judgment, the condition of the apartment constituted a health-and-safety hazard that allegedly violated a provision in the lease requiring Thomas to keep his apartment clean and sanitary and to use reasonable diligence in the care of his apartment. Therefore, Weyrich decided to evict Thomas from his apartment based on this alleged nonmonetary default under the lease.

Thomas testified at trial that in January of 2000, he left his Houston apartment and checked into the Veterans Affairs Hospital ("VA Hospital") in Waco, Texas, for treatment for posttraumatic stress disorder. Thomas stated that he returned briefly to his Houston apartment in February of 2000, to find that it had been broken into and that, after his return to the VA Hospital, Thomas wrote a letter to Weyrich. In this letter, Thomas identified himself and his apartment unit, and stated the following, among other things:

> I am now a patient in the Veterans Hospital, Waco[,] Texas. I hope that my stay hear [sic] will be brief. I have be [sic] here for about three 3 weeks.

> The purpose for this letter is to inform you that I returned last week Saturday to find that my apartment had be [sic] broken into, and burgarized. [sic]

> The door was broken into and some of my property was stolen and gone through.

Thomas testified that he sent this letter on or about February 29, 2000, along with a rental payment to Weyrich at a Houston post office box-the address to which Thomas was instructed to mail all of his correspondence. The president of Weyrich testified that this was Weyrich's post office box under Bank One's control and that the tenants of Thomas's apartment complex were instructed to mail their rent payments to this address. Weyrich admitted at trial that Bank One received the above-quoted letter from Thomas on March 6, 2000. The envelope containing this letter bore a Waco postmark, although Thomas put his Houston apartment as the return address on the envelope.

Thomas testified that, when he left his Houston apartment to be hospitalized in Waco in January of 2000, the apartment was clean and livable and it did not look the way that it did in the photographs admitted in evidence at trial. Thomas testified to his belief that, after he left for the VA Hospital, but before the police officers entered his apartment on February 23, 2000, someone gained entry to his apartment and "trashed" it.

On or about March 8, 2000, two days after Bank One received Thomas's February 29th letter, Weyrich posted a "notice to vacate" on the door to Thomas's Houston apartment and sent a copy of the notice by certified mail to Thomas at the address of the Houston apartment. Thomas testified that, at that time, he was in the VA Hospital in Waco and, consequently, did not receive this notice. Less than a week after posting the notice to vacate, Weyrich filed a sworn complaint for forcible detainer in a justice court in Harris County. Regarding service of process, this complaint stated:

Defendant resides in said Justice Precinct, 7, HARRIS County, Texas, and may be served with process at the Leased Premises ... which is: [address of Thomas's Houston apartment] or at Defendant's work address [blank line] or at such other place as the Defendant may be found. Plaintiff knows of no other home or work address of the Defendant in HARRIS County, Texas. Service is requested on defendants [sic] by personal service at home or work or by alternate service under Rule 742 or Rule 742a.

On March 21, 2000, a constable filed an affidavit with the justice court stating that he had made three unsuccessful attempts to serve Thomas personally at the apartment address. On March 22, 2000, the presiding judge of the justice court signed an order stating that all the requirements for alternative service under Rule 742a had been met and authorizing alternate service under this rule. The next day, a constable served the citation and complaint under Rule 742a. On April 4, 2000, the justice court signed a default judgment against Thomas, who was still undergoing inpatient treatment at the VA Hospital in Waco. Thomas testified that he did not appear because he did not receive service or notice of the proceedings. On April 11, 2000, the justice court signed a writ of possession, entitling Weyrich to possession of Thomas's Houston apartment and commanding Thomas to leave the premises immediately.

At trial, Thomas testified that on April 13, 2000, after the deadline for appealing the default judgment had expired, an employee of Weyrich called him at the VA Hospital in Waco and told him that he had been sued and that he had been evicted from his Houston apartment. Thomas stated that he asked this employee if he could have thirty days to return to Houston to remove his property from the apartment and that the employee replied that she would give him two days to do so. Thomas testified that this was the first time he heard anything about being evicted. Thomas decided that he would return to Houston to try to retrieve his property. The next day, Thomas was discharged from the VA Hospital in Waco. He arrived in Houston by bus on April 15, 2000, and immediately went to his apartment but he could not get in because the locks had been changed. Thomas testified that, at some point, his furniture, belongings, and automobile were placed in storage and that he could not obtain these items from the storage company because he did not have the money to pay for the storage costs. Thomas stated that, by the time he came back with money for the storage costs, some of his property, including his car, had been sold. Thomas was unable to recover the automobile or much of his other property.

The president of Weyrich testified about the circumstances surrounding the eviction, the address to which Thomas sent notification of his hospitalization, and the role of Bank One, the company's bank, *vis a vis* that address. Specifically, Weyrich's president stated the following: (1) Bank One picks up the mail from the post office box in question every day; (2) Bank One then processes this mail over a period ranging from one day to two weeks, and then delivers the detail to the Bank One branch near Weyrich's office; (3) Weyrich picks up the processed material from Bank One on a daily basis; and (4) Weyrich does not know when it actually received possession of Thomas's February 29, 2000 letter from Bank One, but its president believes that it was not until after Weyrich filed the sworn complaint on March 12, 2000. It is undisputed, however, that Bank One received Thomas's letter before Weyrich filed the complaint. At trial, Weyrich de-

nied that Bank One was its agent for any purpose other than collection of rents.

Thomas filed this suit against Weyrich asserting claims for wrongful eviction, intentional infliction of emotional distress, and violations of the Texas Deceptive Trade Practices Act ("DTPA"). After Thomas rested his case-in-chief, the trial court granted a directed verdict in favor of Weyrich on the grounds there was legally insufficient evidence to support Thomas's DTPA and intentional-infliction-of-emotional-distress claims and that Weyrich fully complied with Chapter 24 of the Texas Property Code and Texas Rules of Civil Procedure 742 and 742a.

## II. ISSUES AND ANALYSIS

### A. Did the trial court err by summarily striking Thomas's DTPA and intentional-infliction-of-emotional-distress claims during the pretrial conference?

In his first issue, Thomas asserts that the trial court erred by summarily striking his DTPA and intentional-infliction-of-emotional-distress claims during a pretrial conference. We have reviewed the portions of the record cited by Thomas and the reporter's record for the entire pretrial conference in question. We conclude that the trial court did not strike any of Thomas's claims during this pretrial conference. Accordingly, we overrule Thomas's first issue.

### B. Did the trial court err by granting a directed verdict as to the wrongful-eviction claim?

In his second issue, Thomas challenges the trial court's directed verdict as to his wrongful-eviction claim. In reviewing the trial court's granting of a directed verdict, we must determine whether there is any evidence of probative force to raise a fact issue on the material questions presented. *Szczepanik v. First Southern Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994). We consider all of the evidence in the light most favorable to the party against whom the verdict was directed and disregard all contrary evidence and inferences; we give the losing party the benefit of all reasonable inferences created by the evidence. *Id.* If there is any conflicting evidence of probative value, a directed verdict is improper and the case must be reversed and remanded for a jury determination of that issue. *Id.*

We review the trial court's interpretation of Rule 742a of the Texas Rules of Civil Procedure *de novo.* *See Johnson v. City of Fort Worth,* 774 S.W.2d 653, 655–56 (Tex.1989). In construing Rule 742a, our objective is to determine and give effect to the intent of the rule. *See Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000); *Moore v. Wood,* 809 S.W.2d 621, 623 (Tex.App.-Houston [1st Dist.] 1991, no writ) (holding rules of statutory construction also apply to rules of procedure). If possible, we must ascertain that intent from the rule's language and not look to extraneous matters for an intent the rule does not state. *See Nat'l Liab. & Fire Ins. Co.,* 15 S.W.3d at 527. If the meaning of the rule's language is unambiguous, we adopt the interpretation supported by the plain meaning of the rule's words. *See St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words used in the rule. *See id.*

Weyrich's only argument in support of a directed verdict as to Thomas's wrongful-eviction claim in the trial court was that, even if Weyrich had knowledge that Thomas was being treated in the VA Hospital in Waco at the time that it sought to evict

him, Weyrich still fully complied with Chapter 24 of the Texas Property Code and Texas Rules of Civil Procedure 742 and 742a. Both in the trial court and on appeal, Weyrich correctly states that there was a genuine issue of fact as to whether Bank One acted as Weyrich's agent when it received Thomas's letter on March 6, 2000. However, Weyrich asserts that this issue is not material. Thomas concedes that Weyrich complied with Chapter 24 of the Texas Property Code;[1] but, he asserts that this fact issue as to Bank One's agency status is material as to Weyrich's alleged noncompliance with Rule 742a.

■■■■ The narrow issue before this court is whether, presuming Weyrich's knowledge that Thomas was being treated at the VA Hospital in Waco, service on Thomas was proper under Rule 742a. This rule, entitled "Service by Delivery to Premises," states in pertinent part:

> If the sworn complaint lists all home and work addresses of the defendant which are known to the person filing the sworn complaint and if it states that such person knows of no other home or work addresses of the defendant in the county where the premises are located, service of citation may be by delivery to the premises in question. . . .

TEX.R. CIV. P. 742a.

There is no question that Weyrich's sworn complaint contained a statement that Weyrich knows of no other home or work addresses of the defendant in Harris County, the county where the premises are located. In granting the directed verdict as to the wrongful-eviction claim, the trial court resolved a pure question of law in Weyrich's favor. The trial court held that, even if, at the time it signed and filed its sworn complaint, Weyrich knew that

Thomas was receiving treatment at the VA Hospital in Waco, service under Rule 742a was still proper because Thomas's address at the VA Hospital in Waco was not a home or work address.

We agree that the VA Hospital in Waco could not be considered Thomas's work address, but we conclude that it constitutes a home address under the facts of this case. The plain meaning of the rule's words and construction of similar terms by other courts support this conclusion.

"Home address" obviously includes one's primary and usual residence, but, notably, Rule 742a expressly contemplates that a defendant subject to service under its terms may have more than one "home address." *See* TEX.R. CIV. P. 742a ("... *all* home and work addresses of the defendant ..."). Although "home address" is not a defined term in the Texas Rules of Civil Procedure, "home" is defined in a recognized dictionary as "a private dwelling: HOUSE ... an establishment taking the place of a home—see NURSING HOME, TOURIST HOME." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1082 (1993 ed.). We have found no cases construing the term "home address" in the context of Rule 742a, but other cases construing similar terms in other statutes support the conclusion that this term could encompass the hospital where Thomas was being treated. *See Barrow v. State*, 973 S.W.2d 764, 768 (Tex.App.-Amarillo 1998, no pet.) (holding that, for purposes of harboring-a-runaway statute, plain and ordinary meaning of "the child's home" included the house of child's aunt where she was staying for the weekend, although the child normally lived in another dwelling with her parents); *Morgan v. State*, 963 S.W.2d 201, 204 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (holding that appellant's sis-

---

1. In the trial court, Thomas did not assert that Weyrich violated the requirements of the Texas Property Code regarding this notice to vacate.

ter's motel room would be considered appellant's "home" for Fourth Amendment purposes); *Mahon v. Caldwell, Haddad, Skaggs, Inc.*, 783 S.W.2d 769, 771 (Tex. App.-Fort Worth 1990, no writ) (holding that evidence that defendant corporation gave only one business address in the contract for the work at issue in the suit is sufficient to show that this address is the "home address" or "home office" for purpose of service under the Texas long-arm statute). We find Thomas had a home address at the VA Hospital in Waco when the forcible-detainer complaint was signed and filed.

Under the unambiguous language of Rule 742a, we conclude that, if Weyrich knew Thomas was being treated at the VA Hospital in Waco at the time it instituted suit, then service under Rule 742a was not proper in this case because Weyrich did not list this address in its complaint. Although there may be a policy in favor of prompt service and disposition of forcible-detainer actions, it is reasonable to require a plaintiff relying on Rule 742a to obtain service of citation to disclose to the justice court that it knows a defendant is currently living somewhere other than on the leased premises before that plaintiff can obtain constructive service by delivery to the leased premises. Therefore, we sustain Thomas's second issue to the extent that it challenges the trial court's directed verdict as to his wrongful-eviction claim.

**C. Did the trial court err by granting a directed verdict as to Thomas's DTPA and intentional-infliction-of-emotional-distress claims?**

 Thomas also assigns error in his second issue regarding the trial court's

directed verdict as to his DTPA and intentional-infliction-of-emotional-distress claims. However, Thomas has failed to brief this alleged error under his second issue. Under his first issue, Thomas does make a conclusory statement that there was a material fact question as to these claims. Other than this statement, Thomas does not address this alleged error or provide any analysis as to why there was not legally sufficient evidence at trial to support these claims. Thomas cites no part of the record or any legal authority in support of this alleged error. A party asserting error on appeal bears the burden of showing that the record supports the contention raised, and of specifying the place in the record where matters upon which he relies or of which he complains are shown. *See* TEX.R.APP. P. 38.1(h); *Deutsch v. Hoover, Bax & Slovacek, L.L.P,* 97 S.W.3d 179, 198–99 (Tex.App.-Hous. [14th Dist.] 2002, no. pet.). Thomas has not carried this burden and thus has waived these issues. *See* TEX.R.APP. P. 38.1(h); *Deutsch,* 97 S.W.3d at 198–99. Accordingly, we overrule Thomas's second issue to the extent that it challenges the trial court's directed verdict as to Thomas's DTPA and intentional-infliction-of-emotional-distress claims.[2]

### III. CONCLUSION

We find no support in the record for Thomas's assertion that the trial court struck his DTPA and intentional-infliction-of-emotional distress claims during the pretrial conference, and so overrule his first issue complaining of error arising from this alleged action. We sustain Thomas's second issue to the extent that it challenges the trial court's directed verdict

---

**2.** Even if we were to reach the merits in this regard, applying the appropriate standard of review, we still would find that the trial court correctly granted a directed verdict because the evidence was not legally sufficient to support Thomas's DTPA and intentional-infliction-of-emotional-distress claims.

as to his wrongful-eviction claim, and we overrule the remainder of his second issue. Accordingly, we reverse the trial court's judgment to the extent that it granted a directed verdict as to Thomas's wrongful-eviction claim, and we remand for a new trial on this claim in accordance with this opinion. We affirm the remainder of the trial court's judgment.