Affirmed in Part, Reversed and Remanded in Part, and Opinion filed May
27, 2004














Affirmed in Part, Reversed and Remanded in Part, and
Opinion filed May 27, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01212-CV

____________

 

ROOSEVELT C. THOMAS, Appellant

 

V.

 

OLYMPUS/NELSON
PROPERTY MANAGEMENT 

A/K/A WEYRICH REAL ESTATE, INC., Appellee

 

___________________________________________________

 

On Appeal from the 269th District Court

Harris County,
Texas

Trial Court Cause No. 01-25314

 

___________________________________________________

 

O P I N I O N








At issue in this case is the
meaning of Ahome address@ under
Texas Rule of Civil Procedure 742a, governing service of citation by delivery
to premises.  For service to be
appropriate under this rule, the plaintiff must list in the complaint Aall home
and work addresses of the defendant which are known to the [plaintiff].@  We must decide whether service is proper
under this rule if the plaintiff knows the defendant is being treated at an
out-of-town hospital yet does not list this hospital as an address in its
complaint.  Concluding that service under
Rule 742a is not proper in these circumstances, we reverse the trial court=s
directed verdict as to appellant=s
wrongful-eviction claim. Finding no other reversible error, we affirm the
remainder of the trial court=s
judgment.

I.  Factual and
Procedural Background

At the time of the events made
the basis of this suit, plaintiff/appellant Roosevelt C. Thomas had lived in the
same apartment in Houston, Texas, for more than twenty years.  He leased it from an owner who had appointed
defendant/appellee Olympus/Nelson Property Management a/k/a Weyrich Real
Estate, Inc. (hereinafter AWeyrich@) to
manage the apartment complex and, among other things, collect rents due from
tenants. 

Thomas, a United States Marine
Corps veteran from World War II, has been treated over the years for
posttraumatic stress disorder dating from his military service.  A document admitted in evidence at trial
shows that in February of 2000, Thomas was reported as missing and that, on
February 23, 2000, police officers broke down the door to Thomas=s
apartment in an attempt to locate him. 
The president of Weyrich testified that, upon opening Thomas=s apartment,
the police officers observed that the apartment was full of old papers and
trash.  In Weyrich=s
judgment, the condition of the apartment constituted a health-and-safety hazard
that allegedly violated a provision in the lease requiring Thomas to keep his
apartment clean and sanitary and to use reasonable diligence in the care of his
apartment.  Therefore, Weyrich decided to
evict Thomas from his apartment based on this alleged nonmonetary default under
the lease.

Thomas testified at trial that in
January of 2000, he left his Houston apartment
and checked into the Veterans Affairs Hospital
(AVA
Hospital@) in Waco, Texas,
for treatment for posttraumatic stress disorder.  Thomas stated that he returned briefly to his
Houston
apartment in February of 2000, to find that it had been broken into and that,
after his return to the VA  Hospital,
Thomas wrote a letter to Weyrich.  In
this letter, Thomas identified himself and his apartment unit, and stated the
following, among other things:








I am now a patient in the
Veterans Hospital, Waco[,] Texas.  I hope
that my stay hear [sic] will be brief.  I
have be [sic] here for about three 3 weeks.

The purpose for this
letter is to inform you that I returned last week Saturday to find that my
apartment had be [sic] broken into, and burgarized. [sic] 

The door was broken into
and some of my property was stolen and gone through.  

 

Thomas testified that he sent
this letter on or about February 29, 2000, along with a rental payment to
Weyrich at a Houston
post office box C the
address to which Thomas was instructed to mail all of his correspondence.  The president of Weyrich testified that this
was Weyrich=s post office box under Bank One=s control
and that the tenants of Thomas=s
apartment complex were instructed to mail their rent payments to this
address.  Weyrich admitted at trial that
Bank One received the above-quoted letter from Thomas on March 6, 2000.  The envelope containing this letter bore a Waco postmark, although Thomas put his Houston apartment as the return address on
the envelope.  

Thomas testified that, when he
left his Houston apartment to be hospitalized in
Waco in January
of 2000, the apartment was clean and livable and it did not look the way that
it did in the photographs admitted in evidence at trial. Thomas testified to
his belief that, after he left for the VA Hospital, but before the police
officers entered his apartment on February 23, 2000, someone gained entry to
his apartment and Atrashed@ it.

On or about March 8, 2000, two
days after Bank One received Thomas=s
February 29th letter, Weyrich posted a Anotice to
vacate@ on the
door to Thomas=s Houston
apartment and sent a copy of the notice by certified mail to Thomas at the
address of the Houston
apartment.  Thomas testified that, at
that time, he was in the VA Hospital in Waco
and, consequently, did not receive this notice. 
Less than a week after posting the notice to vacate, Weyrich filed a
sworn complaint for forcible detainer in a justice court in Harris County.  Regarding service of process, this complaint
stated: 








Defendant resides in said
Justice Precinct, 7, HARRIS County, Texas, and may be served with process at
the Leased Premises . . . which is: [address of Thomas=s Houston apartment] or at
Defendant=s work address [blank
line] or at such other place as the Defendant may be found.  Plaintiff knows of no other home or work
address of the Defendant in HARRIS County, Texas.  Service is requested on defendants [sic] by
personal service at home or work or by alternate service under Rule 742 or Rule
742a.

 

On March 21, 2000, a constable
filed an affidavit with the justice court stating that he had made three
unsuccessful attempts to serve Thomas personally at the apartment address.  On March 22, 2000, the presiding judge of the
justice court signed an order stating that all the requirements for alternative
service under Rule 742a had been met and authorizing alternate service under
this rule.  The next day, a constable
served the citation and complaint under Rule 742a.  On April 4, 2000, the justice court signed a
default judgment against Thomas, who was still undergoing inpatient treatment
at the VA Hospital in Waco.  Thomas testified that he did not appear
because he did not receive service or notice of the proceedings.  On April 11, 2000, the justice court signed a
writ of possession, entitling Weyrich to possession of Thomas=s Houston apartment and
commanding Thomas to leave the premises immediately.








At trial, Thomas testified that
on April 13, 2000, after the deadline for appealing the default judgment had
expired, an employee of Weyrich called him at the VA Hospital in Waco and told him that he had been sued and that he had
been evicted from his Houston
apartment.  Thomas stated that he asked
this employee if he could have thirty days to return to Houston to remove his
property from the apartment and that the employee replied that she would give
him two days to do so.  Thomas testified
that this was the first time he heard anything about being evicted.  Thomas decided that he would return to Houston to try to
retrieve his property.  The next day,
Thomas was discharged from the VA Hospital in Waco. He arrived in Houston by bus on April 15, 2000, and
immediately went to his apartment but he could not get in because the locks had
been changed.  Thomas testified that, at
some point, his furniture, belongings, and automobile were placed in storage
and that he could not obtain these items from the storage company because he
did not have the money to pay for the storage costs.  Thomas stated that, by the time he came back
with money for the storage costs, some of his property, including his car, had
been sold.  Thomas was unable to recover
the automobile or much of his other property.

The president of Weyrich
testified about the circumstances surrounding the eviction, the address to
which Thomas sent notification of his hospitalization, and the role of Bank
One, the company=s bank, vis
a vis that address. Specifically, Weyrich=s
president stated the following: (1) Bank One picks up the mail from the post
office box in question every day; (2) Bank One then processes this mail over a
period ranging from one day to two weeks, and then delivers the detail to the
Bank One branch near Weyrich=s office;
(3) Weyrich picks up the processed material from Bank One on a daily basis; and
(4) Weyrich does not know when it actually received possession of Thomas=s
February 29, 2000 letter from Bank One, but its president believes that it was
not until after Weyrich filed the sworn complaint on March 12, 2000.  It is undisputed, however, that Bank One
received Thomas=s letter
before Weyrich filed the complaint.  At
trial, Weyrich denied that Bank One was its agent for any purpose other than
collection of rents.

Thomas filed this suit against
Weyrich asserting claims for wrongful eviction, intentional infliction of
emotional distress, and violations of the Texas Deceptive Trade Practices Act (ADTPA@).  After Thomas rested his case-in-chief, the
trial court granted a directed verdict in favor of Weyrich on the grounds there
was legally insufficient evidence to support Thomas=s DTPA
and intentional-infliction-of-emotional-distress claims and that Weyrich fully
complied with Chapter 24 of the Texas Property Code and Texas Rules of Civil
Procedure 742 and 742a.  

II.  Issues And
Analysis

A.        Did the trial court err by summarily
striking Thomas=s DTPA and
intentional-infliction-of-emotional-distress claims during the pretrial
conference?

 








In his first issue, Thomas asserts that the trial
court erred by summarily striking his DTPA and
intentional-infliction-of-emotional-distress claims during a pretrial
conference.  We have reviewed the
portions of the record cited by Thomas and the reporter=s record
for the entire pretrial conference in question. 
We conclude that the trial court did not strike any of Thomas=s claims
during this pretrial conference. 
Accordingly, we overrule Thomas=s first
issue.

B.        Did the trial court err by granting a
directed verdict as to the wrongful-eviction claim?

 

In his second issue, Thomas
challenges the trial court=s
directed verdict as to his wrongful-eviction claim.  In reviewing the trial court=s
granting of a directed verdict, we must determine whether there is any evidence
of probative force to raise a fact issue on the material questions presented.  Szczepanik v. First Southern Trust Co.,
883 S.W.2d 648, 649 (Tex.
1994).  We consider all of the evidence
in the light most favorable to the party against whom the verdict was directed
and disregard all contrary evidence and inferences; we give the losing party
the benefit of all reasonable inferences created by the evidence.  Id.
 If there is any conflicting evidence of
probative value, a directed verdict is improper and the case must be reversed
and remanded for a jury determination of that issue.  Id.

We review the trial court=s
interpretation of Rule 742a of the Texas Rules of Civil Procedure de novo.  See Johnson v. City of Fort
 Worth, 774 S.W.2d 653, 655B56 (Tex. 1989).  In construing Rule 742a, our objective is to
determine and give effect to the intent of the rule.  See Nat=l Liab.
& Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000); Moore v.
Wood, 809 S.W.2d 621, 623 (Tex. App.CHouston
[1st Dist.] 1991, no writ) (holding rules of statutory construction also apply
to rules of procedure).  If possible, we
must ascertain that intent from the rule=s
language and not look to extraneous matters for an intent the rule does not
state.  See Nat=l Liab.
& Fire Ins. Co., 15 S.W.3d at 527.  If the meaning of the rule=s
language is unambiguous, we adopt the interpretation supported by the plain
meaning of the rule=s
words.  See St. Luke=s
Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex. 1997). 
We must not engage in forced or strained construction; instead, we must
yield to the plain sense of the words used in the rule.  See id.








Weyrich=s only
argument in support of a directed verdict as to Thomas=s
wrongful-eviction claim in the trial court was that, even if Weyrich had
knowledge that Thomas was being treated in the VA Hospital in Waco at the time
that it sought to evict him, Weyrich still fully complied with Chapter 24 of
the Texas Property Code and Texas Rules of Civil Procedure 742 and 742a.  Both in the trial court and on appeal,
Weyrich correctly states that there was a genuine issue of fact as to whether
Bank One acted as Weyrich=s agent
when it received Thomas=s letter
on March 6, 2000.  However, Weyrich
asserts that this issue is not material. 
Thomas concedes that Weyrich complied with Chapter 24 of the Texas
Property Code;[1]
but, he asserts that this fact issue as to Bank One=s agency status
is material as to Weyrich=s alleged
noncompliance with Rule 742a.  

The narrow issue before this
court is whether, presuming Weyrich=s
knowledge that Thomas was being treated at the VA Hospital in Waco, service on Thomas was proper under Rule
742a.  This rule, entitled AService
by Delivery to Premises,@ states
in pertinent part:

If the sworn complaint
lists all home and work addresses of the defendant which are known to the
person filing the sworn complaint and if it states that such person knows of no
other home or work addresses of the defendant in the county where the premises
are located, service of citation may be by delivery to the premises in question
. . . . 

Tex. R. Civ. P. 742a.

There is no question that Weyrich=s sworn complaint
contained a statement that Weyrich knows of no other home or work addresses of
the defendant in Harris
 County, the county where
the premises are located.  In granting
the directed verdict as to the wrongful-eviction claim, the trial court resolved
a pure question of law in Weyrich=s
favor.  The trial court held that, even
if, at the time it signed and filed its sworn complaint, Weyrich knew that
Thomas was receiving treatment at the VA Hospital in Waco, service under Rule
742a was still proper because Thomas=s address
at the VA Hospital in Waco was not a home or work address.  








We agree that the VA Hospital in Waco could not be
considered Thomas=s work
address, but we conclude that it constitutes a home address under the facts of this
case. The plain meaning of the rule=s words
and construction of similar terms by other courts support this conclusion. 

AHome
address@
obviously includes one=s primary
and usual residence, but, notably, Rule 742a expressly contemplates that a
defendant subject to service under its terms may have more than one Ahome
address.@  See Tex.
R. Civ. P. 742a (A. . . all
home and work addresses of the defendant . . .@).  Although Ahome
address@ is not a
defined term in the Texas Rules of Civil Procedure, Ahome@ is
defined in a recognized dictionary as Aa private
dwelling: HOUSE . . . an establishment taking the place of a home C see
NURSING HOME, TOURIST HOME.@  Webster=s Third New International Dictionary 1082
(1993 ed.). We have found no cases construing the term Ahome
address@ in the
context of Rule 742a, but other cases construing similar terms in other
statutes support the conclusion that this term could encompass the hospital
where Thomas was being treated.  See
Barrow v. State, 973 S.W.2d 764, 768 (Tex. App.CAmarillo
1998, no pet.) (holding that, for purposes of harboring-a-runaway statute,
plain and ordinary meaning of Athe child=s home@ included
the house of child=s aunt
where she was staying for the weekend, although the child normally lived in
another dwelling with her parents); Morgan v. State, 963 S.W.2d 201, 204
(Tex. App.CHouston [14th Dist.] 1998, no
pet.) (holding that appellant=s sister=s motel
room would be considered appellant=s Ahome@ for
Fourth Amendment purposes); Mahon v. Caldwell, Haddad, Skaggs, Inc., 783
S.W.2d 769, 771 (Tex. App.CFort
Worth 1990, no writ) (holding that evidence that defendant corporation gave
only one business address in the contract for the work at issue in the suit is
sufficient to show that this address is the Ahome
address@ or Ahome
office@ for
purpose of service under the Texas long-arm statute).  We find Thomas had a home address at the VA
Hospital in Waco
when the forcible-detainer complaint was signed and filed. 








Under the unambiguous language of
Rule 742a, we conclude that, if Weyrich knew Thomas was being treated at the VA
Hospital in Waco at the time it instituted suit, then service under Rule 742a
was not proper in this case because Weyrich did not list this address in its
complaint.  Although there may be a
policy in favor of prompt service and disposition of forcible-detainer actions,
it is reasonable to require a plaintiff relying on Rule 742a to obtain service
of citation to disclose to the justice court that it knows a defendant is
currently living somewhere other than on the leased premises before that
plaintiff can obtain constructive service by delivery to the leased
premises.  Therefore, we sustain Thomas=s second
issue to the extent that it challenges the trial court=s
directed verdict as to his wrongful-eviction claim.

C.        Did the trial court err by granting a
directed verdict as to Thomas=s DTPA and
intentional-infliction-of-emotional-distress claims?

 








Thomas also assigns error in his
second issue regarding the trial court=s
directed verdict as to his DTPA and
intentional-infliction-of-emotional-distress claims.  However, Thomas has failed to brief this
alleged error under his second issue. 
Under his first issue, Thomas does make a conclusory statement that
there was a material fact question as to these claims.  Other than this statement, Thomas does not
address this alleged error or  provide
any analysis as to why there was not legally sufficient evidence at trial to
support these claims.  Thomas cites no
part of the record or any legal authority in support of this alleged
error.  A party asserting error on appeal
bears the burden of showing that the record supports the contention raised, and
of specifying the place in the record where matters upon which he relies or of
which he complains are shown.  See
Tex. R. App. P. 38.1(h); Deutsch
v. Hoover, Bax & Slovacek, L.L.P, 97
S.W.3d. 179, 198B99 (Tex. App.CHous.
[14th Dist.] 2002, no. pet.).  Thomas has
not carried this burden and thus has waived these issues.  See Tex.
R. App. P. 38.1(h); Deutsch, 97 S.W.3d at 198B99.  Accordingly, we overrule Thomas=s second
issue to the extent that it challenges the trial court=s
directed verdict as to Thomas=s DTPA
and intentional-infliction-of-emotional-distress claims.[2]  

III. 
Conclusion

We find no support in the record
for Thomas=s assertion that the trial court
struck his DTPA and intentional-infliction -of-emotional distress claims during
the pretrial conference, and so overrule his first issue complaining of error
arising from this alleged action.  We
sustain Thomas=s second issue to the extent that
it challenges the trial court=s
directed verdict as to his wrongful-eviction claim, and we overrule the
remainder of his second issue. 
Accordingly, we reverse the trial court=s
judgment to the extent that it granted a directed verdict as to Thomas=s
wrongful-eviction claim, and we remand for a new trial on this claim in
accordance with this opinion.  We affirm
the remainder of the trial court=s
judgment.

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Opinion filed May 27, 2004.

Panel consists of Justices Edelman, Frost, and Guzman.

 

 











[1]  In the trial court, Thomas did not
assert that Weyrich violated the requirements of the Texas Property Code
regarding this notice to vacate.

 





[2]  Even if we
were to reach the merits in this regard, applying the appropriate standard of
review, we still would find that the trial court correctly granted a directed verdict
because the evidence was not legally sufficient to support Thomas=s DTPA and
intentional-infliction-of-emotional-distress claims.