MOSS V. STATE



NO. 07-04-0330-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



MAY 11, 2005



______________________________




ALONZO B. MOSS, III, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NO. 33,504-E; HONORABLE ABE LOPEZ, JUDGE



_______________________________



Before QUINN and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION

 Appellant Alonzo B. Moss, III challenges an order of the trial court revoking his
community supervision and sentencing him to four years confinement. In a single point of
error, Moss contends the court erred in denying his motion to dismiss the State's motion to
revoke his community supervision because the State failed to exercise due diligence in
executing the capias for his arrest. We affirm.

 On October 24, 1994, appellant pled guilty to aggravated theft and received two years
deferred adjudication probation. In February 1996, the State reported that appellant had
violated the terms of his probation and filed a motion to proceed with adjudication of guilt. 
Appellant did not contest the violations and the court extended his probation by three years. 
In August 1998, the State filed a second motion to revoke his probation, citing additional
violations and a new theft offense. Appellant was adjudicated guilty on the original theft
charge on November 20, 1998, but the sentence was suspended in favor of four years of
community supervision. In June 2002, the State discovered that appellant had been detained
on felony theft charges in Lubbock County. The State filed a motion to revoke appellant's
community supervision on September 17, 2002, based on the new theft charges and
appellant's failure to report to his supervision officer. Three days later, on September 20th,
the court issued a capias for appellant's arrest. 

 In December 2002, the Community Supervision Office learned that Lubbock County
authorities were not aware of the Potter County capias. The office immediately requested that
a teletype of the warrant be sent to Lubbock County. Following the request, they received a
confirmation from the Potter County Sheriff's Office stating that the warrant had been served. 
No further action was taken regarding the capias. Appellant was released by Lubbock County
on bond in March 2003. After his release, appellant resided in Lubbock and contacted the
Community Supervision Office in Potter County to see if he owed any money. Believing that
his community supervision had expired, he did not report the fact that he had been released
or his new Lubbock address. The Community Supervision Office did not inform him of the
pending capias for his arrest. Appellant resided in Lubbock until October 2003, when he was
jailed again on previous charges. On April 15, 2004, the trial court issued a bench warrant
requesting that appellant be returned to Potter County. Following his apprehension, appellant
filed a motion to dismiss the State's motion to revoke his community supervision claiming that
the State had not exercised due diligence in executing the capias warrant. Following a
hearing, appellant's motion was denied, and the court assessed the original sentence of four
years confinement.

 Appellant contends the State did not use due diligence because he was not
apprehended until approximately eighteen months after the motion to revoke was filed and
approximately sixteen months after the expiration of his community supervision. We disagree. 
We review the revocation of community supervision under an abuse of discretion standard. 
Cardona v. State, 665 S.W.2d 492, 493 (Tex.Cr.App. 1984). In determining an abuse of
discretion we must look to whether the trial court's decision was arbitrary, unreasonable, and
without reference to guiding rules and principles. Montgomery v. State, 810 S.W.2d 372, 380
(Tex.Cr.App. 1990) (quoting Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42
(Tex. 1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986)). 

 A trial court may hear a motion to revoke community supervision even after the period
of community supervision has expired. Peacock v. State, 77 S.W.3d 285, 287 (Tex.Cr.App.
2002). However, in order for a trial court's jurisdiction to be extended, two acts must occur
prior to the expiration of the probationer's community supervision: 1) the State must file a
motion to revoke, and 2) a capias must be issued for the probationer's arrest. Id.; Tex. Code
Crim. Proc. Ann. art. 42.12, § 21(e) (Vernon Supp. 2004-05). A capias warrant may be issued
for any violation at any time during the period of community supervision. Art. 42.12, § 21(b). 
Once the jurisdictional requirements are met, the State must use due diligence in executing
the capias. Id. at § 24; Peacock, 77 S.W.3d at 287-88. The State's failure to execute the
capias with due diligence is an affirmative defense to revocation. Art. 42.12, § 24. See also
Connolly v. State, 983 S.W.2d 738, 741 (Tex.Cr.App. 1999) (holding that failure to execute
the capias with due diligence is a plea in bar for the probationer). As an affirmative defense,
the probationer has the burden of raising the issue of due diligence at the revocation hearing. 
Peacock, 77 S.W.3d at 287-88. Once the issue is before the court, the burden shifts to the
State to show by a preponderance of the evidence that due diligence was used in executing
the capias. Id. at 288.

 Here, the jurisdiction of the trial court is undisputed as the State's motion to revoke was
filed and capias was issued prior to the expiration of appellant's community supervision. The
motion to revoke was based on new thefts committed by appellant in Lubbock County in
January 2001 and June 2002 and appellant's failure to report to his supervision officer. Due
to appellant's failure to abide by the conditions of his community supervision, the court issued
a capias for his arrest on September 20, 2002. Appellant maintains the first time he learned
of the capias was when he was arraigned in Lubbock on April 13, 2004. Therefore, he claims
the State did not use due diligence in executing the warrant. Article 42.12, section 24 of the
Texas Code of Criminal Procedure provides that the State's failure to execute a capias with
due diligence is a defense "to revocation for an alleged failure to report to a supervision officer
as directed or to remain within a specified place . . . ." Applying the rules of statutory
construction, we must accord criminal statutes their plain and ordinary meaning. See Barrow
v. State, 973 S.W.2d 764, 768 (Tex.App.-Amarillo 1998, no pet.). In doing so, we find the due
diligence statute makes no mention of probation violations resulting from a probationer's
failure to refrain from committing additional crimes against the State. We agree with the
State's argument that the due diligence defense as stated in section 24 applies only to
appellant's failure to report to his community supervision officer. The law does not require the
State to exercise due diligence in executing a capias issued for crimes perpetrated while
under community supervision. See Nurridin v. State. 154 S.W.3d 920, 924 (Tex.App.-Dallas
2005, no pet.). Because this rule is dispositive of appellant's motion to dismiss, we find it
unnecessary to determine whether the State acted with due diligence on appellant's failure
to report. Appellant's sole point of error is overruled.

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice


Do not publish.



 judgment is proper
for a defendant if the defendant affirmatively disproves at least one element of the plaintiff's
claim or establishes all necessary elements of an affirmative defense to the claim. See
American Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). 

 We will examine the record in light of Christine's response in the trial court which
urged that more than a scintilla of evidence was presented on the issue of Mark's being a
reckless driver. See Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 203-04 (Tex.
2002). In examining the record, we consider any evidence presented in the light most
favorable to the non-movant Christine. See Wal-Mart Stores, 92 S.W.3d at 506; Johnson,
73 S.W.3d at 208. NEGLIGENT ENTRUSTMENT

 A cause of action for negligence has three elements: (1) a legal duty owed by one
party to another, (2) a breach of that duty, and (3) damages proximately caused by that
breach. See Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990). 
A claim for damages based on the theory that a party negligently entrusted a vehicle to
another and thereby caused damages has the same three elements. See Garcia v. Cross,
27 S.W.3d 152, 155 (Tex.App.--San Antonio 2000, no pet.). 

 Christine claims that the Hudsons negligently entrusted their vehicle to Mark
because: (1) the Hudsons entrusted to Mark a vehicle they owned or over which they had
the right of control, (2) at the time of entrustment Mark was a reckless driver, (3) the
Hudsons knew or should have known at the time of entrustment that Mark was a reckless
driver, (4) Mark was negligent on the occasion in question, and (5) Mark's negligence
proximately caused the accident. See Schneider v. Esperanza Transmission Co., 744
S.W.2d 595, 596 (Tex. 1987); McCarty v. Purser, 379 S.W.2d 291, 294 (Tex.1964). 

 To obtain recovery against the Hudsons, Christine essentially must prove two
negligence causes of action in one lawsuit. One cause of action requires proof that Mark's
negligence in operating the vehicle proximately caused the accident and Eric's injuries
(elements 4 and 5 of her allegations). The other cause of action requires proof that the
Hudsons were negligent in entrusting a vehicle to Mark because he was a reckless driver
and that their negligence was a proximate cause of Eric's injuries (elements 1, 2 and 3 of
her allegations together with proximate causation). See Schneider, 744 S.W.2d at 596-97
(entrustment liability rests upon the combined negligence of the entrustor in entrusting the
vehicle and the negligence of the driver entrusted with the vehicle; the risk that forms the
basis for determining that the entrustment was negligent must also be a proximate cause
of the accident in question for the entrustor to be liable); McCarty, 379 S.W.2d at 294. It
is the elements of the latter of the two negligence causes of action that the Hudsons
challenged by their summary judgment motion. 

 On appeal, the Hudsons seek to sustain their summary judgment by asserting that
Mark was not a reckless driver and, therefore, they could not have known that he was a
reckless driver. Additionally, the Hudsons argue that there was no evidence that their
entrustment, even if negligent, was a proximate cause of the damages asserted. See
Schneider, 744 S.W.2d at 596-97; McCarty, 379 S.W.2d at 294. 

 At the outset, we decline to consider the Hudsons' assertion that their entrustment
of the vehicle to Mark, even if negligent, was not a proximate cause of Eric's injuries. The
issue was not expressly presented in the trial court by their motion for summary judgment. 
See TRCP 166a(c); Johnson, 73 S.W.3d at 204; Casso v. Brand, 776 S.W.2d 551, 553
(Tex. 1989). 

 In focusing on the issue of whether Mark was a reckless driver, the Hudsons urge
us to apply the definition of "reckless" which the Legislature has used in criminalizing
reckless driving. The criminal offense of reckless driving is committed when a person drives
a vehicle in wilful or wanton disregard for the safety of persons or property. Tex. Transp.
Code Ann. § 545.401 (Vernon 1999). Wilful and wanton disregard is synonymous with
conscious indifference. See White v. State, 647 S.W.2d 751, 753 (Tex.App.-Fort Worth
1983, writ ref'd). The Hudsons do not cite authority for their proposition. Nor do we find
authority requiring the driving history of an entrustee to reflect a pattern of wilful and wanton
actions in disregard for the safety of other persons or property before the entrustee can be
found to be "reckless" for the purposes of a negligent entrustment action.

 On the other hand, we note that in regard to negligent entrustment, drivers have
been determined to be reckless when their history of driving habits, traffic violations, or
intemperance (whether due to wilful and wanton actions or otherwise) exhibits a pattern of
such deviations from lawful and proper manner of vehicle operation that if the entrustor had
knowledge of the history, the entrustor should reasonably have anticipated that the driver
would operate the entrusted vehicle in a wrongful manner and thereby damage persons or
property. See Schneider, 744 S.W.2d at 596; Louis Thames Chevrolet Co. v. Hathaway,
712 S.W.2d 602, 604 (Tex.App.-Houston [1st Dist.] 1986, no writ); Revisore v. West, 450
S.W.2d 361, 364 (Tex.Civ.App.-Houston [14th Dist.] 1970, no writ); Broesche v. Bullock, 427
S.W.2d 89, 93 (Tex.Civ.App.-Houston [14th Dist.] 1968, writ ref'd n.r.e.). We decline to
engraft the heightened standard for criminalized reckless driving onto the common-law
negligent entrustment cause of action. 

 The Hudsons also argue that because there is no evidence that Mark actually was
under the influence of alcohol or marijuana on the occasions in question, the evidence that
he drove after using the substances cannot be considered in regard to whether he was a
reckless driver. We disagree. 

 The episodes of Mark's driving after using alcohol and marijuana were of sufficient
concern to the Hudsons that they temporarily suspended Mark's privileges to drive when
they found out about the situations. Mark testified that the suspension for his drinking and
driving was because the Hudsons considered the matter a safety issue. Viewing the
evidence in the limited record before us in the light most favorable to Christine, evidence
that Mark used marijuana (4) and that the Hudsons restricted Mark's driving privileges based
on their knowledge of that usage raises a similar inference that they considered the matter
a driving safety issue. Such matters could be considered (5) in regard to whether Mark was
a reckless driver; that is, whether Mark's driving history was such that the Hudsons should
reasonably have anticipated that Mark would operate an entrusted vehicle in an unsafe
manner, resulting in damage to persons or property. 

 The Hudsons further argue that the instances in which Mark drove after drinking and
after using marijuana should not be considered in regard to the negligent entrustment claim
because there is no allegation that Mark used alcohol, marijuana or any similar substance
on the morning of the accident, and the risk which might have been anticipated from those
past instances was not a proximate cause of the accident. See Schneider, 744 S.W.2d at
596-97. As noted previously, we will not consider the proximate cause aspect of the
Hudsons' argument because they did not present the issue in their motion for summary
judgment. 

NO-EVIDENCE SUMMARY JUDGMENT 

 If each incident is viewed separately, as the Hudsons assert should be done, none
of the episodes might, in and of themselves, be sufficient evidence for Christine to avoid
summary judgment. But, they are not to be viewed separately and in isolation from one
another. The term "history" commonly is used to reference those past events that form the
subject matter of a history. See In the Matter of the Marriage of Stein, No. 07-03-0289-CV
*7 (Tex.App.--Amarillo 2004, no pet. h.); Merriam-Webster's Collegiate Dictionary 549
(10th ed. 2002). Mark's "history" of driving habits, traffic violations and intemperance
includes all such events predating the Hudsons' entrustment of a vehicle on the date of the
accident. And, viewing the events of that history in the light most favorable to Christine's
claim, each of the instances could be considered in relation to whether Mark was a reckless
driver. 

 The series of events, compressed as they were to within an approximate two-year
period preceding the date of the accident, presented more than a scintilla of evidence that
Mark was a reckless driver within the context of a negligent entrustment cause of action. 
Thus, the grant of a no-evidence summary judgment would have been improper.


TRADITIONAL SUMMARY JUDGMENT 

 Mark testified in his deposition that he was intoxicated when he drove himself and
several friends to school after drinking whiskey, rum, vodka and tequila. He testified that
he drove after using marijuana on at least two other occasions, and summary judgment
evidence was not presented to conclusively prove that he was not impaired by the
marijuana. See Tex. Transp. Code Ann. §§ 521.343(a)(3), 521.372(a)(1) (Vernon 1999 and
Supp. 2004). Nor does the summary judgment proof show that, as a matter of law, Mark
(1) did not deserve the speeding ticket, (2) was not at fault in the collision with the tree (a
fixed object), or (3) was not at fault in the rear-end collision with another automobile. 

 In sum, the Hudsons did not prove, as a matter of law, that one or more of the
referenced incidents were not of a type to be considered on the question of Mark's alleged
recklessness as a driver. We have previously determined that the events comprising Mark's
history, as a whole, presented at least a scintilla of evidence that Mark was a reckless driver
within the context of a negligent entrustment cause of action. Thus, the Hudsons did not
prove by their summary judgment evidence that, as a matter of law, Mark was not a reckless
driver. 

 Finally, we consider the Hudsons' uncontroverted proof that they took corrective
action following Mark's driving transgressions. Given the record before us those actions
and the small amount of time which elapsed between the last corrective action and the
accident did not prove that, as a matter of law, Mark had changed, by overcoming his
driving history and the risk it presented, and was no longer a reckless driver. We offer no
opinion on what part, if any, the Hudsons' corrective actions would play in regard to the
proximate cause issue.

 Summary judgment on a traditional basis was not warranted. 

CONCLUSION

 Because the Hudsons were not entitled to either a no-evidence summary judgment
or a traditional summary judgment, we reverse the judgment and the cause is remanded
for further proceedings. 

 

 Phil Johnson

 Chief Justice




 
1. Further reference to a rule of Civil Procedure will be by reference to "TRCP __."
2. Mark's testimony dated both the collision incidents in 2000; other testimony raised
the inference that they may actually have occurred in 1999. In their summary judgment
motion, the Hudsons represented to the trial court that the second collision incident
occurred in October of 2000. 
3. Christine's notice of appeal identifies the July 26, 2002 order as the order appealed
from. The July 26th order merely severs the negligent entrustment claim from the
negligence claim. We conclude, however, that the notice of appeal constitutes a bona fide
attempt to invoke this court's jurisdiction over the summary judgment and is sufficient to
invoke our jurisdiction. See City of San Antonio v. Rodriguez, 828 S.W.2d 417, 418 (Tex.
1992) (per curium); Grand Prairie Indep. Sch. Dist. v. Southern Parts Imports, Inc., 813
S.W.2d 499, 500 (Tex. 1991). 
4. Whether evidence that Mark used alcohol or marijuana before driving will be
admissible at trial without proof that his driving abilities were impaired thereby or that he
was intoxicated while driving are questions not presented and we offer no opinion on those
matters.
5. We offer no opinion as to whether the instances of Mark's driving after using
alcohol and marijuana, without consideration of the additional driving incidents and
speeding ticket, comprise evidence that Mark was a reckless driver sufficient for Christine
to avoid summary judgment.