Steve RODRIGUEZ, Appellant,

v.

U.S. SECURITY ASSOCIATES, INC., Appellee.

No. 14–03–00892–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 28, 2005.

Mason C. Meyer, Houston, for appellant.

Edward P. Perrin Jr., Jennifer R. Poe, Dallas, for appellee.

Panel consists of Chief Justice HEDGES and Justices FOWLER and SEYMORE.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant Steve Rodriguez, third-party defendant below, brought cross-claims against appellee U.S. Security Associates, Inc. (USSA) and others who allegedly represented to his health care providers that he was an employee of USSA entitled to health insurance benefits, but then denied both the relationship and the benefits. After a lengthy procedural history, including two removals, two remands, and a bench trial, the trial court entered a take-nothing judgment against both Rodriguez and USSA on their claims against each other. In three issues, Rodriguez contends the trial court erred in (1) granting USSA's motion to strike his timely-filed first amended cross-claim and not permitting him an opportunity to replead, (2) dismissing his tort claims based on federal preemption, and (3) holding that he was not a third-party beneficiary of the purchase agreement between USSA and his former employer and thus could not recover on a claim for wrongful termination.

We agree that the trial court erred when it granted USSA's motion to strike, because that was an unauthorized procedural mechanism used to substantively attack Rodriguez's pleadings; we therefore sustain his first issue and do not reach his second issue. However, we overrule Rodriguez's third issue and affirm the trial court's conclusion that Rodriguez was not a third-party beneficiary of the purchase agreement between USSA and his former employer.

## I. Background

### A. Factual Background

Rodriguez worked as a security guard for Nation Wide Security, Inc., which provided him with medical coverage and other benefits as part of his compensation. In early December 1996, he became ill while at work and had to leave his post. Rodriguez was eventually hospitalized and diagnosed with acute pancreatitis, a life-threatening illness. He was transferred to Hermann Hospital, where he remained until he was discharged at the end of December.

On December 22, 1996, while Rodriguez was receiving treatment at Hermann Hospital, Nation Wide sold certain assets to USSA under an Asset Purchase Agreement (Purchase Agreement). The Purchase Agreement included the following provision regarding Nation Wide's employees:

3.2.7 *Offers of Employment.* ... Buyer will extend an offer of employment to all Persons employed by Seller immediately prior to the Effective Date in its Guard Services business conducted out of those locations listed on SCHEDULE 1.15 hereto at rates of pay no less favorable as their rates as of the Closing Date and with credit for seniority with respect to their rights to benefits under Buyer's standard benefit plan; provided, however, that such employees execute and enter into employment and/or consulting agreements in form and substance satisfactory to Buyer.

Rodriguez was readmitted to Hermann Hospital on January 28, 1997, and remained there through February 8, 1997. During his hospitalizations and related treatments, USAA representatives repeatedly told Rodriguez and Hermann Hospital that Rodriguez was covered under USSA's health benefits. Despite its representations, however, USSA refused to pay most of Rodriguez's medical bills, totaling over $400,000. Instead, it asserted that Rodriguez was discharged when it purchased Nation Wide's assets and retroactively terminated his eligibility for medical benefits as of December 22, 1996.

## B. Procedural Background

In September of 1997, Hermann Hospital sued USSA, U.S. Security Employee Benefit Plan, and First Health Benefits Administrators Corp. (USSA defendants),[1] in a Harris County, Texas district court, alleging various claims arising out of USSA's representations of coverage. The

USSA defendants removed the case to federal court, alleging that Hermann Hospital's claims were preempted by the Employee Retirement Income Security Act of 1974 (ERISA).[2] The case was remanded, and the USSA defendants then filed a third-party petition against Rodriguez for contribution and indemnity. In response, Rodriguez lodged counterclaims against the USSA defendants, including fraud, wrongful termination, promissory estoppel, negligent misrepresentation, and "violations of the Insurance Code, Deceptive Trade Practices, and other rules and regulations of the State Board of Insurance, including the Texas Administrative Code." The USSA defendants again removed the case, claiming that Rodriguez's claims implicate ERISA.

While in federal district court, the USSA defendants moved for summary judgment against Rodriguez and Hermann Hospital. On March 25, 2001, the district court signed a Memorandum and Order on Defendants' Motion for Summary Judgment in which it detailed the parties' claims, explained its rulings, and rendered judgment. In relevant part, the district court granted summary judgment in favor of USSA on all of Rodriguez's claims except his wrongful termination claim, which the district court remanded to state court. The district court also held that Hermann Hospital's claims were not preempted by ERISA and remanded its state law claims as well. That same day, the district court entered a final judgment dismissing the action.

---

1. Although U.S. Security Employee Benefit Plan and First Health Benefits Administrators Corp. f/k/a First Health Strategies (TPA), Inc. were parties below, they are not parties to this appeal. Hermann Hospital also sued Nation Wide, Nation Wide Security, Inc. Employee Health Benefit Plan, and Weyco, Inc.,

but the claims against these defendants were eventually dismissed with prejudice and are not a subject of this appeal.

2. *See* 29 U.S.C. §§ 1001–1461; *see also* 28 U.S.C. § 1331 (federal question jurisdiction).

Back again in state court, the USSA defendants unsuccessfully moved for summary judgment on Rodriguez's wrongful termination claim. The case was then set for trial in August of 2002. In July of 2002, Rodriguez amended his cross-claim to "reassert" the claims the federal district court had ruled on, and to add claims for equitable estoppel and conspiracy.[3] In response, the USSA defendants filed a "Motion to Strike Third–Party Defendant's First Amended Cross–Claim." On August 19, 2002, at the start of trial, the trial court granted this motion. Rodriguez's remaining wrongful termination claim, and the parties' other claims, were then tried to the court over several days.

On November 8, 2002, the trial court signed a final judgment in favor of Rodriguez on his wrongful termination claim. The trial court also adopted the findings of fact and conclusions of law Rodriguez proposed. A month later, the trial court granted Rodriguez's motion to modify the final judgment to include additional damages. However, after a hearing on the USSA defendants' motion to modify the judgment and motion for new trial, the trial court again amended its judgment. In the Second Amended Final Judgment, signed March 5, 2003, the trial court ordered that Rodriguez take nothing on his claims against the USSA defendants and that they take nothing on their claims against him.[4] The trial court also adopted the USSA defendants' proposed amended conclusions of law. Rodriguez moved to modify the Second Amended Final Judgment, but the trial court denied that motion. This appeal followed.

## II. Analysis of Rodriguez's Issues

### A. The Trial Court Erred by Granting USSA's Motion to Strike Rodriguez's First Amended Cross–Claims Because This Was an Unauthorized Procedural Mechanism to Substantively Attack Rodriguez's Pleadings.

In his first issue, Rodriguez contends the trial court's judgment should be reversed because, in granting the motion to strike his first amended cross-claim and not affording him an opportunity to replead, the trial court used an unauthorized procedural mechanism to dismiss his claims. We agree.

*1. The circumstances surrounding the motion to strike*

After the second remand, and more than seven days before the start of trial, Rodriguez amended his cross-claim to "reassert" the claims for fraud, negligent misrepresentation, and promissory estoppel that the federal district court denied in its grant of summary judgment in favor of the USSA defendants. Rodriguez also added two new claims: equitable estoppel and conspiracy. He also included allegations supporting the wrongful termination claim that the federal court had remanded. In response, the USSA defendants moved to strike the first amended cross-claim.

In their motion to strike, the USSA defendants asserted that, with the exception of the wrongful termination claim, all of Rodriguez's claims were barred. Specifically, they contended that (1) the fraud, negligent misrepresentation, and promissory estoppel claims were barred because the federal district court had already ruled

---

3. Rodriguez's amended pleading did not reassert the violations of the Insurance Code or Deceptive Trade Practices Act made in the earlier pleading.

4. In the Second Amended Final Judgment, the trial court left in place its judgment in favor of Hermann Hospital and awarded damages of $235,917.66 and pre-and post-judgment interest. Hermann Hospital is not a party to this appeal.

on them, (2) equitable estoppel was not an independent cause of action, and (3) the conspiracy claim, which was based on an alleged breach of the Purchase Agreement's provision that all Nation Wide employees would be offered employment, could not succeed as a matter of law. In support of its contention that the conspiracy claim could not succeed, the USSA defendants argued that (1) no underlying tort remained to support it, and (2) contrary to Rodriguez's allegations, a principal cannot conspire with its own agent. Rodriguez responded that the federal court's rulings were not binding on the trial court, and that his amended claims alleged state law claims that were not preempted by ERISA. In reply, the USSA defendants asserted that the claims the federal court ruled on were barred by collateral estoppel. They also contended that Rodriguez misunderstood the federal court's order and argued that the federal court denied Rodriguez's claims on other grounds in addition to preemption, which Rodriguez did not address.

At the start of the trial, the trial court granted the USSA defendants' motion to strike, and Rodriguez proceeded to trial on his only remaining claim, the wrongful termination claim.

### 2. The parties' arguments on appeal

Rodriguez contends the Texas Rules of Civil Procedure do not include a procedure for attacking the substance of an amended pleading filed more than seven days before trial using a motion to strike, and therefore trial court erred by using an unauthorized procedural mechanism to summarily dismiss his claims without giving him an opportunity to replead. He contends that USSA was required to file special exceptions or a motion for summary judgment to obtain dismissal of the claims for the reasons USSA alleged.

USSA responds that (1) Rodriguez has waived this complaint because he did not raise it below, (2) USSA was not required to file a summary judgment or special exceptions on the reasserted claims because it would be unnecessary and illogical to require it to reassert a summary judgment granted in the same case (albeit in federal court) as an "affirmative defense" to an amended pleading, and (3) if necessary, the motion to strike could be viewed as asserting special exceptions to Rodriguez's new claims of equitable estoppel and conspiracy. Moreover, USSA contends, as to the new claims, the trial court did not err by not allowing Rodriguez an opportunity to replead because the claims alleged are not recognized under Texas law and the defects were incurable.

### 3. The motion to strike was an improper vehicle for dismissing Rodriguez's claims on the merits

We recognize USSA's apparent frustration with Rodriguez's amended pleading, and we cannot say that, under these circumstances, its arguments are entirely without merit or persuasive effect. However, Rodriguez is correct that the motion to strike is not authorized under the Texas Rules of Civil Procedure as USSA used it here: to summarily dismiss Rodriguez's substantive claims without an opportunity to replead. See, e.g., Fort Bend County v. Wilson, 825 S.W.2d 251, 252–53 (Tex.App.-Houston [14th Dist.] 1992, no writ); Centennial Ins. Co. v. Commercial Union Ins. Cos., 803 S.W.2d 479, 482–83 (Tex.App.-Houston [14th Dist.] 1991, no writ); Susanoil, Inc. v. Cont'l Oil Co., 516 S.W.2d 260, 263–64 (Tex.App.-San Antonio 1973, no writ). Moreover, as in Centennial, we find that Rodriguez has not waived this issue because the trial court's use of the unauthorized procedural mechanism was the type of error that cannot be waived. See Centennial, 803 S.W.2d at

482 (holding that complaint that appellee used an unauthorized procedure to obtain dismissal of appellant's claims was not waived because the trial court lacked authority to enter the order of dismissal).

As this court explained in *Centennial*, motions for summary judgment and special exceptions provide well-settled procedural guidelines and protections, but motions to dismiss claims for failing to state a cause of action do not. *Centennial*, 803 S.W.2d at 483. Under the Texas Rules of Civil Procedure, the proper way for a defendant to urge that a plaintiff has failed to plead a cause of action is by special exception. *Id.* Special exceptions may also be used to question the sufficiency in law of a plaintiff's petition. *Id.* And, when special exceptions are sustained, the pleader must be given, as a matter of right, an opportunity to replead. *Id.* Only after special exceptions have been sustained and a party has been given an opportunity to amend its pleadings may a case be dismissed for failure to state a cause of action. *Id.*

The circumstances of this case illustrate the dangers of dismissing claims using an unauthorized procedural vehicle like the motion to strike used here. First, the motion was not properly denominated in accordance with the rules of civil procedure. Second, it triggered no specified timetables or protective procedures. Third, it was granted without an opportunity for Rodriguez to amend his pleading before his claims were stricken.

On appeal, the lack of any established procedures or guidelines presents us with additional difficulties. It is not clear what standard of review we are to apply to the trial court's action. In its brief, USSA mentions the abuse-of-discretion standard, but at oral argument, it suggested de novo review was appropriate, and admitted that it found no cases addressing the appropri-

ate standard of review to apply. We also have had difficulty interpreting the motion as a pleading that is authorized by the rules of civil procedure. The motion to strike cannot be considered a motion for summary judgment, because it did not comply with the specific procedures outlined in Texas Rule of Civil Procedure 166a. *See* Tex.R. Civ. P. 166a(c) (specifying requirements of summary judgment motion and proceedings). Likewise, it cannot be interpreted as special exceptions because it was not denominated as such, and neither the parties nor the court treated the motion to strike as special exceptions.

Although USSA contends its attack on Rodriguez's equitable estoppel and conspiracy claims could reasonably be viewed as special exceptions because it alleged that Rodriguez failed to state a claim under Texas law, we reject this claim as well as its secondary claim that repleading would not cure the ills in Rodriguez's action and so dismissal would be appropriate. These suggestions fail to cure the fundamental problem with USAA's motion to dismiss: the Texas Rules of Civil Procedure do not recognize or sanction a substantive motion to dismiss. When the motion was filed, it failed to notify Rodriguez what action he must take in response, for the simple reason that none is specified in the rules. To penalize Rodriguez for not responding in a certain way to a fictional pleading and to reward USAA for filing a fictitious pleading when the rules contain two very appropriate pleadings (motions for summary judgment and special exceptions) with very specific responses for this situation would be unwise. That would create confusion when the purpose of the rules is to do just the opposite. *See* Tex.R. Civ. P. 1 ("The proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the

rights of litigants under established principles of substantive law.").

Therefore, we sustain Rodriguez's first issue, and we reverse and remand his claims of fraud, negligent misrepresentation, promissory estoppel, equitable estoppel, and conspiracy to the trial court for further proceedings in accordance with this opinion. Because of our disposition of the first issue, we do not reach Rodriguez's second issue addressing the merits of the stricken claims.

**B. The Trial Court Correctly Ruled that Rodriguez was not a Third–Party Beneficiary of the Purchase Agreement and Therefore Could Not Recover on a Claim for Wrongful Termination Based on a Breach of the Agreement.**

In his third issue, Rodriguez contends the trial court erred as a matter of law in concluding that he was not a third-party beneficiary of the Purchase Agreement and so could not recover on a claim for wrongful termination based on the agreement. Rodriguez points out that the trial court's Amended Final Judgment and Supplemental Findings of Fact and Conclusions of Law determined that Rodriguez was a third-party beneficiary of the Purchase Agreement and could state a claim for wrongful termination, but it reversed itself in the Second Amended Final Judgment and its Amended Conclusions of Law. Rodriguez requests that we reverse the later judgment and reinstate the Amended Final Judgment. We find, however, that the trial court correctly determined that Rodriguez was not a third-party beneficiary of the Purchase Agreement.

Two provisions of the Purchase Agreement are central to our analysis. As noted in the factual background above, the Purchase Agreement contained the following provision regarding offers of employment to Nation Wide's employees:

3.2.7 *Offers of Employment.* ... Buyer will extend an offer of employment to all Persons employed by Seller immediately prior to the Effective Date in its Guard Services business conducted out of those locations listed on SCHEDULE 1.15 hereto at rates of pay no less favorable as their rates as of the Closing Date and with credit for seniority with respect to their rights to benefits under Buyer's standard benefit plan; provided, however, that such employees execute and enter into employment and/or consulting agreements in form and substance satisfactory to Buyer.

In a later section containing miscellaneous provisions, the Purchase Agreement disavows third-party beneficiaries:

9.3 **No Third Party Beneficiaries.** The provisions of this Agreement shall not entitle any person not a signatory to this Agreement to any rights as a third party beneficiary, or otherwise, it being the specific intention of the parties hereto to preclude any and all non-signatory parties from any such third party beneficiary rights, or any other rights whatsoever.

The gist of Rodriguez's contention is that the "Offers of Employment" provision created a specific promise or guarantee of employment benefiting him and other Nation Wide employees. Rodriguez acknowledges the language disavowing third-party beneficiaries, but contends that the trial court misconstrued the Texas Supreme Court's opinion in *MCI Telecommunications Corp. v. Texas Utilities Electric Co.* to erroneously conclude that this "boilerplate" provision expressly negates any intent to benefit third parties. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650–52 (Tex.1999).

Generally, a plaintiff may not enforce a contract to which he is not a party. *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex.2002)(per curiam). A third party may recover on a contract made between other parties only if he can show that the contracting parties intended the contract for his direct benefit. *MCI Telecomms.*, 995 S.W.2d at 651; *Drilltec Techs., Inc. v. Remp*, 64 S.W.3d 212, 215 (Tex.App.-Houston [14th Dist.] 2001, no pet.). An incidental benefit is not enough. *MCI Telecomms.*, 995 S.W.2d at 651; *Drilltec*, 64 S.W.3d at 215.

As the *MCI* court instructs, in determining whether a third party can enforce a contract, "the intention of the contracting parties is controlling." *MCI Telecomms.*, 995 S.W.2d at 651. This intention to contract for or confer a direct benefit to a third party must be clearly and fully spelled out, or enforcement by the third party must be denied. *Id.* Thus, a presumption exists that parties contracted for themselves unless it clearly appears that they intended a third party to benefit from the contract. *Id.* To determine the parties' intent, we must examine the entire agreement to harmonize and give effect to all the contract's provisions so that none are rendered meaningless. *Id.* at 652.

Rodriguez contends that the trial court's reliance on the "boilerplate" provision disavowing third-party beneficiaries rendered the "Offers of Employment" provision meaningless in contravention of the contract interpretation principles enunciated in *MCI*. However, the "Offers of Employment" provision is not rendered meaningless merely because former Nation Wide employees like Rodriguez may not enforce it. In this provision, USSA was making a promise to Nation Wide to offer employment to its employees; it was not making a promise to the employees themselves. Therefore, recognizing the parties' intent not to confer rights upon any third-party beneficiaries does not render the "Offers of Employment" provision meaningless.

Moreover, the *MCI* court determined that a similar provision disavowing third-party beneficiaries, which could be harmonized with rights conferred in other provisions of the contract, reflected the parties' express intent and held that the plaintiff was prohibited from asserting any rights as a third-party beneficiary under the contract. *See MCI Telecomms.*, 995 S.W.2d at 652. Indeed, the contract provision at issue in *MCI* was less explicit than the language in the Purchase Agreement, because it did not expressly refer to "third-party beneficiary rights":

> Except as provided in this subparagraph, neither this Agreement, nor any term or provision hereof, nor any inclusion by reference, shall be construed as being for the benefit of any party not in signatory hereto.

*Id.* at 649–650.

Thus, considering the contract as a whole and the presumption against the creation of third-party beneficiaries, and given the explicit language reflecting the parties' intent not to confer rights upon any third-party beneficiaries, we find that the trial court correctly concluded that Rodriguez was not a third-party beneficiary entitled to maintain an action for wrongful termination/breach of contract based on the Purchase Agreement.

We therefore overrule Rodriguez's third issue.

### III. Conclusion

We hold that the trial court erred by granting USSA's motion to strike using an unauthorized procedural mechanism to substantively attack Rodriguez's pleadings, and we therefore sustain Rodriguez's first issue and do not reach his second issue.

We overrule Rodriguez's third issue and affirm the trial court's conclusion that Rodriguez was not a third-party beneficiary of the purchase agreement between USSA and his former employer. Therefore, we affirm in part and reverse in part the trial court's judgment, and remand for further proceedings in accordance with this opinion.