**Affirmed in Part, Reversed and Remanded in Part, and Opinion filed October 30, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-01026-CV

---

## GWEN STRIBLING HENDERSON, RAVEN A. PITRE, AND CHRISTINE S. WILLIE, Appellants

## V.

## JOHN RICHARD SHANKS AND CARBETT J. DUHON, III, Appellees

---

**On Appeal from the Probate Court No. 1
Harris County, Texas
Trial Court Cause No. 401,492-401**

---

## O P I N I O N

This appeal arises from an ancillary case relating to a core probate matter involving a will contest. Three plaintiffs — a relative of the testatrix, a beneficiary under the first two wills in dispute, and the attorney who drafted these two wills — filed suit asserting tort claims against two defendants — the testatrix's husband and the attorney who drafted a third will. The husband moved the trial court to strike the plaintiffs' petition and to grant a no-evidence and traditional summary

judgment dismissing the claims against him. On the same day, the trial court signed two orders, one striking the plaintiffs' petition and one granting the summary-judgment motion. We construe the two orders as a single, final judgment in which the trial court struck the petition as to both defendants and, in the alternative, granted summary judgment in favor of the husband. Concluding that the trial court erred in granting the motion to strike but did not err in granting a traditional summary judgment, we affirm the trial court's summary judgment as to the husband, reverse the trial court's striking of the petition, and remand to the trial court for further proceedings regarding the plaintiffs' claims against the attorney.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Dr. Cecelia Gibbons was diagnosed with brain cancer. She realized that she might have only a few months to live. Gibbons decided that she wanted to update her estate planning and execute a new will. Therefore, on the day of her diagnosis, May 13, 2010, Gibbons contacted her friend, appellant/plaintiff Christine Willie, an estate-planning attorney, and talked to her about estate planning. Willie prepared a will, and the next day Gibbons executed it (hereinafter the "May Will"). Two days after executing this will, Gibbons married appellee/defendant John Richard Shanks, with whom she had been romantically involved since 2001.[1] Four days later, Gibbons had surgery to remove a brain tumor.

Two weeks later, on June 3, 2010, Gibbons executed another will that had been prepared by Willie (hereinafter the "June Will"). Shortly thereafter, Willie sent Gibbons an email explaining the gifts under the June Will and the beneficiary designations on Gibbons's life-insurance policies. Gibbons realized that Willie

_____

[1] This sentence is based upon uncontroverted statements contained in Shanks's summary-judgment affidavit.

2

was going to receive $300,000 as a beneficiary under one of Gibbons's life-insurance policies and $185,000 as a beneficiary under another of Gibbons's life-insurance policies. Gibbons was furious. Gibbons told Shanks several times that Gibbons never meant to give Willie that much money. Gibbons felt betrayed, and said that Willie had taken advantage of her.[2]

Gibbons and Shanks went to Willie's office on June 21, 2010, to pick up Gibbons's file. Shanks contacted appellee/defendant Carbett J. Duhon, III, and within a few days Gibbons met with Duhon. Two months later, on August 26, 2010, Gibbons executed a third will that had been prepared by Duhon (hereinafter the "August Will").

Gibbons passed away on December 9, 2010. Six days later, Willie filed an application to probate the June Will, in which Gibbons named Willie as the independent executrix of her estate. This application was assigned cause number 401,492 in Harris County Probate Court Number One (the "Core Case"). Two weeks later, Shanks filed an application in the same case to probate the August Will, in which Gibbons named Shanks as the independent executor of her estate. Six months later, Willie amended her application so that she sought to probate the May Will rather than the June Will. Willie alleged that Gibbons lacked testamentary capacity after May 20, 2010, and therefore lacked testamentary capacity when she executed the June Will and the August Will.

The probate court signed a docket control order in July 2011, setting December 16, 2011 as the deadline for amending or supplementing pleadings (the "Pleadings Deadline"). Shanks timely amended his application, adding a number of new parties on whom citation would be served but from whom Shanks did not

---

[2] The last five sentences of this paragraph are based upon uncontroverted statements contained in Shanks's summary-judgment affidavit.

seek any affirmative relief. Among these parties was appellant/plaintiff Raven Pitre, Gibbons's daughter, and appellant/plaintiff Gwen Stribling Henderson, a beneficiary under the May Will and the June Will but not under the August Will. Before the Pleadings Deadline, Pitre and Henderson each filed an opposition to the probate of the August Will, alleging lack of testamentary capacity and undue influence by Shanks.

Six days after the Pleadings Deadline in the Core Case, Willie, Pitre, and Henderson (hereinafter collectively the "Plaintiffs") filed an original petition in cause number 401,492-401 in Harris County Probate Court Number One (the "Ancillary Case"). In this pleading, the Plaintiffs sought actual and exemplary damages against Shanks and Duhon based on tort claims for breach of fiduciary duty and tortious interference with inheritance rights.

Shanks and Duhon answered in the Ancillary Case. Three weeks after answering, Shanks filed a motion to strike the Plaintiffs' Original Petition in the Ancillary Case, and, on the same day, Shanks moved for a traditional and a no-evidence summary judgment. The Plaintiffs opposed these motions and also objected to Shanks's motion for a no-evidence summary judgment and requested a continuance because the Plaintiffs alleged that there had not yet been an adequate time for discovery.

The probate court signed an order in which it granted Shanks's summary-judgment motion and dismissed with prejudice the Plaintiffs' claims against Shanks. On the same day, the probate court signed another order in which it granted Shanks's motion to strike the Plaintiffs' Original Petition with prejudice.

## II.  ISSUES AND ANALYSIS

On appeal the Plaintiffs assert in four issues: (1) that leave of court is not

4

required to file ancillary claims in Harris County probate courts and that the trial court erred in striking the Plaintiffs' pleadings, (2) that Shanks's no-evidence motion for summary judgment was totally premature, (3) that genuine issues of material fact precluded rendition of a traditional summary judgment in favor of Shanks, and (4) that there are no pleadings to support the striking of the Plaintiffs' pleadings with prejudice as to Duhon. In response, Shanks asserts a number of arguments in support of the proposition that this court lacks jurisdiction over this appeal.[3]

Before addressing the merits of this appeal, we first resolve the threshold issues of determining what judgment the trial court rendered and whether this court has jurisdiction over the Plaintiffs' appeal from that judgment.

**A. What judgment did the trial court render?**

The trial court signed two separate orders on the same day that were filed in the trial court's file at the same time. In one order, the trial court granted Shanks's summary-judgment motion and dismissed with prejudice the Plaintiffs' claims against Shanks. In the other order, the trial court granted Shanks's motion to strike and then struck the Plaintiffs' Original Petition with prejudice. We conclude that these orders should be construed together as a single, final judgment, in which the trial court both granted the motion to strike the Original Petition in its entirety and also, in the alternative, granted Shanks's summary-judgment motion and dismissed with prejudice the Plaintiffs' claims against Shanks.[4] *See* Tex. R. Civ. P. 301

---

[3] Duhon has not filed an appellate brief. No party has asserted that the trial court lacked probate jurisdiction. We conclude that the trial court had probate jurisdiction over the Ancillary Case under former Probate Code section 5 or section 5A. *See* Act of May 28, 2003, 78th Leg., R.S., ch. 1060, §§ 1–4, 2003 Tex. Gen. Laws 3052, 3052–54, repealed effective January 1, 2014 by Act of May 26, 2009, 81st Leg., R.S., ch. 680, 2009 Tex. Gen. Laws 1512, 1512–1732.

[4] Shanks argues that this court lacks appellate jurisdiction because the trial court only dismissed

5

(stating that "[o]nly one final judgment shall be rendered in any cause except where it is otherwise specially provided by law"); *Conte v. Ditta*, No. 14-02-00482-CV, 2003 WL 21191296, at *5, n.7 (Tex. App.—Houston [14th Dist.] May 22, 2003, no pet.) (stating that separate documents executed at the same time for the same purpose and in the course of the same transaction are to be construed together) (mem. op.); *Rodriguez v. Seider*, No. 03-04-00454-CV, 2005 WL 723682, at *1 (Tex. App.—Austin Mar. 31, 2005, no pet.) (construing two orders signed by the trial court on the same day in the same case as a single, final judgment) (mem. op.); *Port Distributing Corp. v. Fritz Chemical Co.*, 775 S.W.2d 669, 671 (Tex. App.—Dallas 1989, writ dism'd) (construing together as a single judgment an order striking a pleading and a separate order signed on same day granting summary judgment). Thus, the trial court concluded that, even if it were not proper to strike the Plaintiffs' pleadings, Shanks was entitled to have the claims against him dismissed with prejudice based on his summary-judgment motion.[5] *See* Tex. R. Civ. P. 301; *Conte*, 2003 WL 21191296, at *5, n.7; *Rodriguez*, 2005 WL 723682, at *1; *Port Distributing Corp.*, 775 S.W.2d at 671.

## B. Is this appeal moot?

After the trial court rendered its final judgment in the Ancillary Case, the Core Case proceeded to trial. During trial in the Core Case, Henderson, Pitre, and Willie nonsuited "their entire cause of action against all other [a]pplicants." The

---

the Plaintiffs' claims against him and therefore there is no final and appealable judgment. This argument is incorrect because the trial court struck the Plaintiffs' petition as to the claims against both Shanks and Duhon.

[5] We reject the Plaintiffs' argument that the trial court's striking of their petition deprived the trial court of subject-matter jurisdiction to grant Shanks's summary-judgment motion. This court's opinion in *Granado v. Madsen,* which the Plaintiffs have cited, is not on point because, in that case, the trial court struck the plaintiff's pleadings several months before it signed an order purporting to grant summary judgment in favor of one of the defendants. *See* 729 S.W.2d 866, 870–71 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

6

trial court in the Core Case granted Shanks a directed verdict as to the validity of the August Will and on the issue of Gibbons's capacity to execute the August Will. The trial court signed an order in the Core Case admitting the August Will to probate, denying probate as to the May Will and the June Will, and granting letters testamentary to Shanks as independent executor upon taking of the required oath. The trial court signed a final order in the Core Case, and the appeal by Henderson, Pitre, and Willie from that order is the subject of a separate appeal in this court.[6]

Shanks asserts that there is no longer any controversy regarding the August Will and therefore the Plaintiffs' claims in the Ancillary Case and in this appeal are moot. For a justiciable controversy to exist, there must be a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *See Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). Henderson, Pitre, and Willie nonsuited their claims in the Core Case, and we presume that by doing so, these parties nonsuited any claims in the Core Case that Gibbons lacked testamentary capacity to execute the August Will, that there was undue influence by Shanks, and that the May Will or June Will should be admitted to probate. Nonetheless, the Plaintiffs did not nonsuit their tort claims against Shanks and Duhon in the Ancillary Case. Instead, the Plaintiffs have appealed from the trial court's judgment in the Ancillary Case, and they argue on appeal that this court should reverse the trial court's judgment in the Ancillary Case and remand the case to the trial court. The nonsuit in the Core Case and the trial court's orders in the Core Case have not mooted the controversies between the Plaintiffs and Shanks and Duhon regarding the Plaintiffs' tort claims.[7] The record

---

[6] The appeal from that final order is pending in this court in Cause Number 14-13-00078-CV.

[7] Shanks also argues that this appeal is moot because the Plaintiffs' claims allegedly are barred by judicial estoppel based on the unsworn "NOTICE OF NON-SUIT" filed in the Core Case and based on the trial court's orders in the Core Case. These actions occurred after the trial court had

reflects real and substantial controversies involving a genuine conflict of tangible interests and not merely a theoretical dispute. This appeal has not become moot; rather, it presents justiciable controversies between and among the parties that actually will be determined by this court.[8] *See Bonham State Bank*, 907 S.W.2d at 467–69; *Anambra State Community in Houston, Inc. v. Ulasi*, 412 S.W.3d 786, 791–92 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

## C. Were the Core Case and the Ancillary Case a single case or two separate cases?

Shanks asserts that this court lacks jurisdiction over this appeal because the orders from which the Plaintiffs seek to appeal did not dispose of the claims in the Core Case and therefore there was no final and appealable judgment until the final order in the Core Case. Shanks also asserts that this court lacks jurisdiction over this appeal because the nonsuit of the Plaintiffs' claims in the Core Case allegedly vitiated the trial court's prior order striking the Plaintiffs' claims in the Ancillary Case and therefore made this appeal moot. Both of these jurisdictional arguments are based on the premise that the Core Case and the Ancillary Case are a single

rendered judgment in the Ancillary Case. Duhon does not appear to have been a party in the Core Case. In the Ancillary Case, the trial court did not dismiss the Plaintiffs' claims based upon any assertion of the defense of judicial estoppel. Presuming, without deciding, that the "NOTICE OF NON-SUIT" and the orders signed in the Core Case would entitle Shanks and Duhon to a dismissal of the Plaintiffs' tort claims based on the defense of judicial estoppel, the applicability of this defense would not make this appeal or the Plaintiffs' tort claims moot or deprive this court of jurisdiction over this appeal.

[8] Shanks also argues that this appeal is moot because the Plaintiffs' claims allegedly are barred by res judicata based upon the trial court's orders in the Core Case. The trial court signed these orders in the Core Case after it rendered judgment in the Ancillary Case. Duhon does not appear to have been a party in the Core Case. In the Ancillary Case, the trial court did not dismiss the Plaintiffs' claims based upon any assertion of the defense of res judicata or claim preclusion. Presuming, without deciding, that the orders signed in the Core Case would entitle Shanks and Duhon to a dismissal of the Plaintiffs' tort claims based on the defense of res judicata or claim preclusion, the applicability of this defense would not make this appeal or the Plaintiffs' tort claims moot or deprive this court of jurisdiction over this appeal.

case rather than two separate cases.

The Rules of the Probate Courts of Harris County provide as follows:

- All new estate administrations, guardianships, and trust matters that are filed in the Probate Courts of Harris County shall be assigned a docket number sequentially. *See* Harris County Prob. R. 2.2.

- All matters relating to an estate or guardianship administration shall have only the sequential docket number. *See* Harris County Prob. R. 2.4. All ancillary matters shall be assigned the original docket number plus a suffix commencing with 4. *See id.* For example, the Estate of Mary Doe, Deceased, shall be assigned number 123,456. An ancillary matter shall be assigned cause number 123,456-401. *See id.* The Clerk shall maintain separate files for each sub-file number. *See id.*

- Those matters that are principally concerned with the administration of the estate are "core matters" and should be filed under the main cause number. *See* Harris County Prob. R. 2.5.

- Any of the proceedings that is a "core matter" may be severed as an ancillary proceeding at the probate court's discretion. *See id.*

- Contested matters that bear no direct relationship to the administration of the estate and that would have the possibility of becoming an independently-tried lawsuit (each potentially with its own docket control and discovery schedules) are ancillary matters that belong in a different file with an ancillary or related case designation. *See* Harris County Prob. R. 2.6.

Under these rules, ancillary matters have a separate file and are given a different cause number from the core matter to which they relate. *See* Harris County Prob. R. 2.2, 2.4. The rules allow a probate court to sever a proceeding that is a core matter into an ancillary proceeding. *See* Harris County Prob. R. 2.5. The rules refer to ancillary matters as contested matters that have the possibility of becoming an independently-tried lawsuit. *See* Harris County Prob. R. 2.6. The parties have not cited, and research has not revealed, any Texas statute or rule with which these rules are inconsistent or any case interpreting these rules. Under the unambiguous language of these rules, we conclude that, though an ancillary matter

9

is related to a core matter, a case filed as an ancillary matter with a cause number for an ancillary matter is a separate and independent case from the core matter to which it relates. Absent some judicial action to consolidate the ancillary matter with the core matter, the two cases are separate. The record does not reflect that the trial court consolidated the Ancillary Case and the Core Case. All relevant actions in the Core Case were taken under the cause number for that case, and all relevant actions in the Ancillary Case were taken under the cause number for that case. Therefore, the Ancillary Case and the Core Case are two separate cases.

Because the claims in the Core Case were pending in a separate case, the trial court's failure to adjudicate those claims in its judgment in the Ancillary Case did not make that judgment interlocutory or not subject to appeal. Likewise, the nonsuit of the Plaintiffs' claims in the Core Case did not nonsuit any claims in the Ancillary Case or vitiate the trial court's order striking the Plaintiffs' claims in the Ancillary Case. Concluding that this court has jurisdiction over this appeal, we reject the jurisdictional challenges and turn to the merits.

**D. Did the trial court err in striking the Plaintiffs' Original Petition?**

In their first issue, the Plaintiffs assert that the trial court erred in striking their Original Petition. We review this ruling under an abuse-of-discretion standard of review. *See In re K.A.C.O.*, No. 14-07-00311-CV, 2009 WL 508295, at *6–9 (Tex. App.—Houston [14th Dist.] Mar. 3, 2009, no pet.) (mem. op.). Duhon did not move to strike the Plaintiffs' Original Petition. Shanks filed a two-page motion to strike this petition in the cause number for the Ancillary Case. In this motion, Shanks asserted that "this will contest" began in December 2010, when Willie filed an application to probate the June Will. Shanks referred in the motion to the docket control order and the Pleadings Deadline issued in the Core Case. Shanks noted that the Plaintiffs filed their tort claims against Shanks and

10

Duhon after the Pleadings Deadline had passed. Shanks asserted that the Plaintiffs did not seek leave of court and that their Original Petition was untimely as a matter of law and should be stricken.

The only authority Shanks cited in his motion to strike was Texas Rule of Civil Procedure 63, which governs amendments and responsive pleadings. *See* Tex. R. Civ. P. 63. This rule provides in its entirety as follows:

> Parties may amend their pleadings, respond to pleadings on file of other parties, file suggestions of death and make representative parties, and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

Tex. R. Civ. P. 63. We review the trial court's interpretation of Rule 63 de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex. 1989); *Thomas v. Olympus/Nelson Property Management*, 148 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2004, no pet.). In construing Rule 63, our objective is to determine and give effect to the intent of the rule. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000); *Thomas*, 148 S.W.3d at 399. If possible, we must ascertain that intent from the rule's language and not look to extraneous matters for an intent the rule does not state. *See Nat'l Liab. & Fire Ins. Co.*, 15 S.W.3d at 527; *Thomas*, 148 S.W.3d at 399. If the meaning of the rule's language is unambiguous, we adopt the interpretation supported by the plain meaning of the rule's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997); *Thomas*, 148 S.W.3d at 399. We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words used in Rule

11

63. *St. Luke's Episcopal Hosp.*, 952 S.W.2d at 505; *Thomas*, 148 S.W.3d at 399.

The filing of Plaintiffs' Original Petition initiated suit in the Ancillary Case and was the first pleading filed in that case. The Plaintiffs' Original Petition was not an amended pleading, a supplemental pleading, or a pleading in response to another party's pleading. The Plaintiffs' Original Petition was not a suggestion of death, nor did it make representative parties. We conclude that, under Rule 63's unambiguous language, the rule does not apply to the Plaintiffs' Original Petition. *See* Tex. R. Civ. P. 63. To the extent the trial court concluded that Rule 63 applied to the Plaintiffs' Original Petition, the trial court abused its discretion. *See id.*; *In re K.A.C.O.*, 2009 WL 508295, at *6–9.

The Plaintiffs filed their Original Petition after the Pleadings Deadline in the trial court's docket control order under Texas Rule of Civil Procedure Rule 166. The only argument that Shanks advanced in his motion to strike was that the Original Petition in the Ancillary Case should be stricken because it was filed without leave of court after the Pleadings Deadline under the docket control order in the Core Case. A premise of Shanks's argument apparently was that the Core Case and the Ancillary Case were a single case and therefore the Plaintiffs' filing of the Original Petition without leave of court violated the docket control order in the Core Case.[9] But, as discussed in the previous section, the Ancillary Case and the Core Case are two separate cases. The Plaintiffs did not file the Original Petition in violation of any docket control order in the Ancillary Case. Because the

[9] On appeal, Shanks also asserts that the Plaintiffs violated the docket control order by asserting claims against Duhon and thus allegedly joining Duhon as a party after the deadline for joinder of parties in the docket control order in the Core Case. Shanks did not raise this argument in the trial court, and this argument does not provide a basis for striking the Plaintiffs' Original Petition under an analysis analogous to the analysis of the argument regarding the deadline in this order for amending or supplementing pleadings.

12

Ancillary Case is a separate case, the Plaintiffs' Original Petition was not an amended, supplemental, or responsive pleading; rather, it was an original petition not subject to Rule 63.

Shanks asserts that the Plaintiffs have not demonstrated that the trial court abused its discretion in determining that the Plaintiffs' claims were compulsory counterclaims required to be asserted in the Core Case. But, the record does not reflect that the trial court made such a determination. Shanks did not assert that the trial court should strike the Original Petition on this ground, and, in its judgment, the trial court granted Shanks's motion to strike without specifying the reason for granting the motion. The trial court did not determine that the claims asserted in the Plaintiffs' Original Petition were compulsory counterclaims required to be asserted in the Core Case, nor did the trial court strike with prejudice the Plaintiffs' Original Petition on the ground that it contained compulsory counterclaims that the Plaintiffs were required to assert in the Core Case.[10] This court must affirm the trial court's striking of the Plaintiffs' Original Petition if it was proper under any legal theory supported by the record. *See Bilnoski v. Pizza Inn, Inc*., 858 S.W.2d 55, 58 (Tex. App.—Houston [14th Dist.] 1993, no writ). Shanks, however, has not cited any cases holding that the compulsory-counterclaim rule is a proper basis for a trial court to strike a claimant's pleading. The compulsory-counterclaim rule is an affirmative defense on the merits to the claims to which it applies in the subsequent action. *See Commint Technical Servs., Inc. v. Quickel*, 314 S.W.3d 646, 651–53 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Though a court

---

[10] Duhon does not appear to have been a party in the Core Case. *See* Tex. R. Civ. P. 97(a) (stating that "[a] pleading shall state as a counterclaim any claim within the jurisdiction of the court, not the subject of a pending action, which at the time of filing the pleading the pleader has *against any opposing party*, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction") (emphasis added).

13

may strike a pleading under Rule 63 or as a sanction, this court has held that the alleged lack of merit of claims asserted in a pleading does not provide a proper basis for striking that pleading. *See Rodriguez v. U.S. Security Assocs.*, 162 S.W.3d 868, 871–75 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Presuming, without deciding, that the compulsory-counterclaim rule provided Shanks a defense to the claims asserted in the Plaintiffs' Original Petition, this defense might provide a potential basis for summary judgment, but it would not provide a proper basis for the trial court to strike the Original Petition. *See Commint Technical Servs., Inc.*, 314 S.W.3d at 651–53; *Rodriguez*, 162 S.W.3d at 871–75.

Shanks asserts that the Plaintiffs have not shown that the trial court abused its discretion in considering the Plaintiffs' claims to be a core matter that should have been filed in the Core Case. The record, however, does not reflect that the trial court decided that the Plaintiffs' claims were a core matter that should have been filed in the Core Case. Shanks did not assert that the trial court should strike the Original Petition on this ground, and, in its judgment, the trial court granted Shanks's motion to strike without specifying the reason for doing so. Presuming, without deciding, that the claims asserted in the Plaintiffs' Original Petition were compulsory counterclaims that the Plaintiffs were required to assert in the Core Case, that would not mean that these claims actually were asserted in the Core Case.[11] The trial court did not conclude that the Plaintiffs' Original Petition was improperly filed as an ancillary matter. The Ancillary Case was separate from the Core Case, and the trial court did not consolidate the Ancillary Case with the Core Case. On the contrary, in its two orders that constitute the final judgment in the Ancillary Case, the trial court struck the Original Petition and granted summary judgment in favor of Shanks in the Ancillary Case. The trial court did not

---

[11] As previously noted, Duhon does not appear to have been a party in the Core Case.

14

conclude that the Plaintiffs' claims were a core matter that should have been filed in the Core Case. The record does not support Shanks's theory that the trial court considered the Plaintiffs' claims to be a core matter that should have been filed in the Core Case.

Rule 63 did not apply to the Plaintiffs' Original Petition. Leave of court was not required under that rule before the Plaintiffs could file their Original Petition in the Ancillary Case, and Rule 63 does not provide a proper basis for the trial court's striking of that pleading. The record does not reflect that the filing of the Plaintiffs' Original Petition violated the docket control order in the Core Case or any other order of the trial court. Nor does the record show that the trial court struck the Plaintiffs' Original Petition as a sanction. The trial court's striking of the Plaintiffs' Original Petition was not proper under any legal theory supported by the record. *See Bilnoski*, 858 S.W.2d at 58. Therefore, we conclude that the trial court erred to the extent it struck the Plaintiffs' Original Petition. *See In re K.A.C.O.*, 2009 WL 508295, at *6–9 (holding trial court erred in striking pleading); *Seale v. Texas Dept. of Family and Protective Servs.*, No. 01-10-00440-CV, 2011 WL 765886, at *3–5 (Tex. App.—Houston [1st Dist.] Mar. 3, 2011, no pet.) (holding trial court erred in striking intervention petition) (mem. op.). Accordingly, we sustain the Plaintiffs' first issue and reverse the part of the trial court's judgment in which it strikes the Plaintiffs' Original Petition with prejudice.

**E. Did the trial court err in granting Shanks's motion for a traditional summary judgment?**

In certain formal relationships, such as that between an attorney and a client, a fiduciary duty arises as a matter of law. *See Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005). Courts sometimes call such a duty a "formal fiduciary duty." *See Insurance Company of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).

15

An informal fiduciary duty may arise from certain relationships involving a high degree of trust and confidence that do not give rise to a formal fiduciary duty. *See Meyer*, 167 S.W.3d at 330–31. But, Texas courts do not allow such relationships to be found lightly. *See id.* Not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship, and subjective trust is not sufficient to transform an arms-length transaction into a fiduciary relationship. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997).

Shanks asserted as a ground for a traditional summary judgment that Shanks did not owe any of the Plaintiffs a fiduciary duty. And, the uncontroverted summary-judgment evidence proved as a matter of law that Shanks did not owe any of the Plaintiffs a fiduciary duty, either based on a formal fiduciary duty or on an informal fiduciary duty. *See Mims-Brown v. Brown*, 428 S.W.3d 366, 375–76 (Tex. App.—Dallas 2014, no pet.). In the trial court and on appeal, the Plaintiffs' only argument as to why Shanks owed them a fiduciary duty has been that Shanks acted as an attorney-in-fact for Gibbons under a statutory durable power of attorney. There is no evidence that Shanks acted as an attorney-in-fact for any of the Plaintiffs. We conclude that, even if Shanks owed Gibbons a fiduciary duty based on his acting as attorney-in-fact for Gibbons under such a power of attorney, as a matter of law, that relationship does not mean that Shanks owed a fiduciary duty to any of the Plaintiffs. *See Belt v. Oppenheimer, Blend, Harrison & Tate*, 192 S.W.3d 780, 782–84 (Tex. 2006) (noting the rule in Texas that a testator's attorney does not owe a duty of care to non-client beneficiaries under a will drafted by the attorney); *Mims-Brown*, 428 S.W.3d at 375–76 (holding that the summary-judgment evidence proved as a matter of law that the defendant did not owe a fiduciary duty at the time of her allegedly actionable conduct, either based on a formal fiduciary duty or on an informal fiduciary duty); *Thompson v. Vinson &*

*Elkins*, 859 S.W.2d 617, 623–24 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (holding that, as a matter of law, law firm representing trustee did not owe fiduciary duty to beneficiaries of the trust). Because the summary-judgment evidence proved as a matter of law that Shanks did not owe any of the Plaintiffs a fiduciary duty, the trial court did not err in granting a traditional summary judgment as to the Plaintiffs' claims against Shanks for breach of fiduciary duty.

The Plaintiffs have not briefed any argument challenging the trial court's traditional summary judgment as to the Plaintiffs' claims against Shanks for tortious interference with inheritance rights. The Plaintiffs have not provided any argument, analysis, or citations showing how the trial court erred in granting Shanks's motion for a traditional summary judgment as to these claims. Even under a liberal interpretation of the Plaintiffs' appellate briefing, we cannot conclude that they have adequately briefed these issues. *See Fish v. Marsters*, 14-06-00129-CV, 2007 WL 1438555, at *5 (Tex. App.—Houston [14th Dist.] May 17, 2007, pet. denied) (mem. op.); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 337 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Accordingly, we cannot conclude that the trial court erred in granting a traditional summary judgment as to the Plaintiffs' claims against Shanks for tortious interference with inheritance rights.[12]

The trial court did not err in granting Shanks's motion for a traditional summary judgment as to the Plaintiffs' claims against him. Accordingly, we overrule the Plaintiffs' third issue.

---

[12] Even if there had not been briefing waiver, we still would conclude that the trial court did not err in granting a traditional summary judgment as to the Plaintiffs' claims against Shanks for tortious interference with inheritance rights.

### III.    CONCLUSION

Rule 63 did not apply to the Plaintiffs' Original Petition, and that rule does not provide a proper basis for the trial court's striking of the petition.  The record does not reflect that the filing of the Plaintiffs' Original Petition violated the docket control order in the Core Case or any other order of the trial court.  Nor does the record show that the trial court struck the Plaintiffs' Original Petition as a sanction. The trial court's striking of the Plaintiffs' Original Petition was not proper under any legal theory supported by the record.  The trial court erred to the extent it struck the Plaintiffs' Original Petition.  In its judgment, the trial court, in the alternative, dismissed with prejudice the Plaintiffs' claims against Shanks based on Shanks's motion for a traditional summary judgment. The trial court did not err in granting this motion.  Therefore, we affirm the trial court's judgment to the extent the trial court granted Shanks's motion for summary judgment and dismissed with prejudice the Plaintiffs' claims against Shanks.[13] To the extent the trial court struck the Plaintiffs' Original Petition with prejudice, we reverse the trial court's judgment. We sever the Plaintiffs' claims against Duhon and remand those claims to the trial court for further proceedings.


/s/     Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Jamison and Wise.

---

[13] We need not and do not address the Plaintiffs' second and fourth issues.